COMMONWEALTH *vs.* GEORGE T. RAND, SR.

Norfolk.  January 2, 1973. — May 8, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Search and Seizure.  Homicide.  Motor Vehicle,* Operation.  *Wanton or Reckless Conduct.  Practice, Criminal,* Verdict.

Although police had no warrant to search a car involved in a two car collision for evidence linking the car to an earlier hit and run homicide, a pre-trial motion to suppress the fruits of the search was properly denied where the police had no opportunity to obtain a search warrant before the car was stopped at the two car collision, where the physical appearance of the car, its proximity to the scene of the hit and run, and damage to its front end constituted probable cause for the search, made at the police station, and where the car might have been moved out of the jurisdiction. [556–561]

It was not error for the trial judge to deny a motion by the defendant for directed verdicts on indictments for manslaughter of a pedestrian struck and killed by a car and for leaving the scene of an accident after causing personal injuries where there was evidence that the defendant was driving the car on the same street a half-hour before the accident, that he had an opportunity to operate the car at the time of the accident, and that he had authorized no one else to use the car and had sole possession of the ignition keys, and where evidence warranted a finding that the operator could have seen the pedestrian for a substantial distance prior to hitting her and did nothing to avoid her, and a warranted finding of wanton and reckless conduct on his part. [561–563]

A defendant's acquittal on a charge of operating a car so as to endanger the public, which only required proof of ordinary negligence, did not preclude a conviction of manslaughter of a pedestrian struck and killed by the car, which required proof of reckless or wanton conduct, where unchallenged instructions of the trial judge could have suggested to the jury that if they considered the defendant's conduct to be reckless or wanton, they had to find him not guilty of the lesser crime of operating to endanger and guilty of the more serious crime of manslaughter. [563–564]

INDICTMENTS found and returned in the Superior Court on June 4, 1970.

Motions to suppress were heard by *Hennessey, J.*; the cases were tried before *Tomasello, J.*

*Klari Neuwelt* (*Robert V. Greco* with her) for the defendant.

*John P. Connor, Jr.*, Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   The defendant George T. Rand, Sr., appeals under G. L. c. 278, §§ 33A–33G, from convictions on indictments for manslaughter, and for leaving the scene of an accident after causing personal injuries.   The defendant assigns as error: (1) the failure to suppress evidence which the police gathered as a result of an alleged illegal search and seizure of an automobile which the defendant was operating at the time of his arrest for an unrelated offence; (2) the judge's denial of his motions for directed verdicts; and (3) the judge's denial of his motions for a new trial.

From the pre-trial hearing on the motions to suppress, the following evidence pertinent to the first assignment of error appears: On January 29, 1970, at 7:40 P.M. two Weymouth police officers investigated a hit-and-run accident on Washington Street in Weymouth.   They found the victim, Miss Janice McDermott, "lying in the road . . .. There were no apparent signs of life."   The victim's girl friend told Officer DiLorenzo and Registry Inspector MacDonald that she and the victim had been walking along the side of the street with "the McDermott girl being further into the road, approximately two feet" from the road's edge.   The girl friend recalled "hearing a crashing sound and seeing . . . [Janice] being carried down the road on the front portion of the vehicle . . . a late model Chevrolet or Pontiac, possibly white."

At 10:50 P.M. that same evening, Officers DiLorenzo and MacDonald investigated a two car collision in which the defendant was involved.   The defendant was arrested at that time on charges, stemming from this two car col-

lision, of operating so as to endanger, operating under the influence of intoxicating liquor, and drunkenness. During his investigation of this second accident, Registry Inspector MacDonald observed the vehicle operated by the defendant while it was suspended on a tow truck under a street light. The inspector made the following observations: (1) the two car collision took place only 600 feet away from the scene of the prior hit-and-run accident on the same street; (2) in addition to the damage caused by the second accident to the side and rear of the defendant's car, there was damage to the car's front which was consistent in all respects with the hit-and-run accident; (3) there was a string-like material dangling from the headlight and a glass-like object in the automobile's vent cowling; and (4) the car's appearance matched the eyewitness's description of the hit-and-run vehicle.

In light of these observations, the police towed the vehicle to the police station to examine the car more closely in reference to the hit-and-run accident. Relying entirely on an exterior examination of the vehicle, the police found after an hour's investigation an earring, retaining clip, clothing fibers, and fiber impressions (paint samples were also taken), all of which tended to establish the vehicle as the hit-and-run automobile. After this examination was completed, the defendant was charged with manslaughter, leaving the scene after causing personal injuries and operating to endanger. The defendant contends there was error in the denial of his pre-trial motions to suppress all of this evidence on the ground that it was the product of an illegal search and seizure. We disagree.

1. The police had no warrant to search the vehicle and the Commonwealth conceded in argument before this court that the examination of the vehicle at the police station was not incidental to the defendant's initial arrest for charges stemming from an incident, namely the second accident, unrelated to the search. "Thus narrowed, our consideration must focus on whether there were exigent circumstances which permitted . . . [the police]

to search the automobile without a warrant." *Commonwealth* v. *Haefeli*, 361 Mass. 271, 275.

The Commonwealth contends that there was no search of the vehicle at the police station because the police restricted their observations to what was in plain sight. However, the United States Supreme Court has indicated repeatedly that the fact that evidence is in plain view is not by itself legally significant. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than by being simply the normal concomitant of any search, legal or illegal. . . . What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came *inadvertently* (emphasis supplied) across a piece of evidence incriminating the accused." *Coolidge* v. *New Hampshire*, 403 U. S. 443, 465–466.

The facts of the instant case indicate that the police made some initial observations of the defendant's vehicle at the scene of the two car collision which aroused their suspicions about the vehicle's possible involvement in the hit and run. If the police had seized any evidence at that time which was in plain sight, the "plain view" doctrine would justify the seizure because the police had a prior justification for their intrusion, namely the two car collision and the defendant's arrest in the course of which they had inadvertently come across a piece of incriminating evidence.

However, in the instant case, some of the incriminating evidence [1] (e.g., earring, retaining clip, fiber im-

---

[1] The dent on the vehicle's front end and the "piece of string" dangling over one of the headlights were in plain view. See *Commonwealth* v. *LaBossiere*, 347 Mass. 384, 386; *Commonwealth* v. *Campbell*,

pressions) did not come into "plain view" until the police had made an hour long examination of the vehicle at the police station. Their suspicions aroused, the police had taken the vehicle to the station to look for evidence connecting it to the prior hit-and-run accident. Thus, their discovery of such evidence at the station was anything but inadvertent.[2] Therefore, we conclude that the "plain view" rule does not justify the police's deliberate search at the police station for evidence connecting the automobile to the hit and run.

However, the Supreme Court's decision in *Chambers* v. *Maroney*, 399 U. S. 42, provides authority for the police's warrantless search of the automobile in the instant case. The court noted that "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra* [*Carroll* v. *United States*, 267 U. S. 132], holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." P. 51. However, in the *Chambers* case, the police made the search at the station house instead of on the highway where the car was stopped. The court held that

---

352 Mass. 387, 402. However, the earring was not in plain view. Although the officer noticed "an object in the vent, the cowling vent of the car," which turned out to be an earring, it was not "immediately apparent to the police that they . . . [had] evidence before them." *Coolidge* v. *New Hampshire, supra*, at 466. In fact, the officer testified that "I didn't recognize [the piece of glass] as being an earring at that time. I thought it was a piece of glass or something like that."

[2] The Supreme Court was careful to point out that the original justification for the seizure of evidence in plain view cannot be extended to support such a deliberate general exploratory search. "Of course, the extension of the original justification is legitimate *only where it is immediately apparent* to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges" (emphasis supplied). The *Coolidge* case, *supra*, at 466. See *Commonwealth* v. *Wojcik*, 358 Mass. 623, 626–630; *Commonwealth* v. *Haefeli*, 361 Mass. at 281–282; *Commonwealth* v. *Ross*, 361 Mass. 665, 681–682.

if probable cause to search and exigent circumstances initially existed when the car was stopped, there was no valid constitutional reason which prevented the police from conducting the search at the station house instead of on the public highway. "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." P. 52.

The Supreme Court's subsequent decision in the *Coolidge* case, *supra*, indicated "that the Justices of the United States Supreme Court were in seemingly irreconcilable disarray as to what the law was or ought to be with reference to the warrantless search of an automobile." *Commonwealth* v. *Haefeli, supra,* at 278. However, all of the Supreme Court Justices agreed that the *Chambers* case supported at the very least the proposition that *"given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station." *Coolidge* v. *New Hampshire, supra,* at 463, fn. 20. Moreover, the majority opinion in the *Coolidge* case conceded that in determining whether the initial intrusion by the police was justified by exigent circumstances as well as probable cause to search, the proper test was to examine the exigent circumstances at the time the car was stopped and not at the time the car was actually searched at the police station. "It is true that the actual search of the automobile in *Chambers* was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any 'exigent circumstances' had passed, and, for all the record shows, there was a magistrate easily available." *Id.* at 463, fn. 20. Thus, the proper test is whether, at the time a car was stopped, there was probable cause to search the vehicle and there were exigent circumstances such as "the fleeting opportunity to search" justifying an immediate search at that time. *"Chambers* . . . held only that, where the police may stop and search an automo-

bile under *Carroll*, they may also seize it and search it later at the police station." *Id.* at 463.

Unlike the situation in the *Coolidge* case where the police "had known for some time of the probable role of the Pontiac car in the crime" and had ample opportunity to get a search warrant before the night of the defendant's arrest,[3] the police in the instant case, as in the *Chambers, Carroll,* and *Haefeli* cases, *supra,* had no opportunity prior to the initial stopping of the vehicle to obtain a search warrant.

In the instant case, probable cause to search for evidence connecting the car to the hit-and-run accident resulted inadvertently from the police's legitimate investigation of the damage caused by the two car collision for which the defendant had been arrested. The automobile's color, its location, and the nature and extent of the damage to its front end came into the officers' plain view through inadvertence in the course of routine police work. *Commonwealth* v. *Ross,* 361 Mass. at 681–682. *Westover* v. *United States,* 394 F. 2d 164 (9th Cir.). The physical appearance of the car, its proximity to the scene of the hit and run, and the damage to its front end which was consistent with the type of damage expected to the hit-and-run vehicle provided sufficient nexus between the incriminating evidence in plain view and the hit-and-run accident to constitute probable cause to search the automobile for further evidence of the hit and run. See *Commonwealth* v. *Gizicki,* 358 Mass. 291, 295.

As in the *Chambers* and *Haefeli* cases, the vehicle was stopped on a public highway at the time probable cause to search it first arose. Moreover, the police were dealing with a vehicle of unascertained ownership that could have been moved out of the jurisdiction at the owner's direction.[4] See *Commonwealth* v. *Haefeli,* at 282–283. Therefore, we are of the opinion that there

---

[3] "Since the police knew of the presence of the automobile and planned all along to seize it, there . . . [were] no 'exigent circumstance[s]' to justify their failure to obtain a warrant." *Id.* at 478.

[4] The defendant had borrowed the automobile from its owner.

were sufficient exigent circumstances justifying an immediate warrantless search of the automobile which the police had probable cause to believe was involved in the hit-and-run accident. *Commonwealth* v. *Gizicki, supra.* The police could make that search at the police station because the facts constituting probable cause to make the search continued to exist. *Commonwealth* v. *Gizicki, supra,* at 295. The *Chambers* case, *supra.*

2. The defendant's second assignment of error concerns the judge's denial of his motions for directed verdicts on both indictments. The defendant concedes that there was sufficient evidence to warrant a finding that he had possession of the automobile prior to the hit-and-run accident. But he contends that the circumstantial evidence introduced by the Commonwealth to show that he was the driver of the vehicle at the time it struck the victim was insufficient to warrant submission to the jury because it was based on vague conjecture and speculation that could not possibly "produce a moral certainty of guilt, and . . . exclude any other reasonable hypothesis." *Commonwealth* v. *Russ,* 232 Mass. 58, 68. *Commonwealth* v. *Shea,* 324 Mass. 710. We cannot agree.

Our holding in the *Shea* case (relied on by the defendant) that a directed verdict should have been granted for the defendant was based on the fact that the Commonwealth failed to introduce *any* evidence placing the defendant in the hit-and-run vehicle on the date of the offence either before or after the accident. Moreover, there was evidence in that case that another unknown person had been seen operating the vehicle less than three hours before the accident. This court concluded that " '. . . [a] careful examination of the record discloses nothing more than speculation, conjecture or surmise upon which such a [guilty] finding could be based. This is insufficient to sustain the burden resting upon the Commonwealth.' *Commonwealth* v. *Albert,* 310 Mass. 811, 816–817." The *Shea* case, at 714.

However, the circumstantial evidence in the instant case placed the defendant behind the wheel of the vehicle on the same street where the hit-and-run accident occurred a half hour later. Moreover, there was evidence of the defendant's opportunity to operate the vehicle at the time of the hit-and-run accident, that he had authorized no one else to use the car and that he had sole possession of the keys to the ignition. Thus, we do not have a case where the evidence before the jury "tends equally to sustain either of two inconsistent propositions [the guilt or innocence of the defendant]." *Commonwealth* v. *Shea*, 324 Mass. 710, 713. Our review of the record leads us to conclude that the jury were warranted in finding that the defendant was the operator of the automobile at the time of the accident. See *Commonwealth* v. *Swartz*, 343 Mass. 709; *Commonwealth* v. *Medeiros*, 354 Mass. 193.

The defendant argues that even if there were sufficient evidence to prove he was the operator of the hit-and-run vehicle, his motion for a directed verdict on the manslaughter charge should have been granted because there was insufficient evidence to warrant a finding that his conduct was wanton and reckless. We disagree. See *Commonwealth* v. *Welansky*, 316 Mass. 383, 399, "Wanton or reckless conduct amounts to what has been variously described as indifference to or disregard of probable consequences to" another. See also *Commonwealth* v. *Scott*, 359 Mass. 407, 410; *Commonwealth* v. *LaFrance*, 361 Mass. 53; *M. & M. Transp. Co.* v. *Cochran*, 100 F. 2d 207, 209 (1st Cir.).

We think the evidence supports a finding that the defendant could have seen the victim for a substantial distance before the impact and that he failed to slow down, turn toward the open road, or even sound a warning signal. Testimony by investigating police officers indicated that visibility conditions were good[5] as the

---

[5] Officer DiLorenzo testified that as he drove toward the accident scene in the northbound lane, he could see two automobiles parked by the victim's body from a distance of 400 feet.

road was clear and illuminated by mercury vapor lamps. The evidence was sufficient to support a finding that the operator could have seen the victim for a substantial distance prior to hitting her, and, in the circumstances, the jury were justified in finding wilful, wanton, and reckless conduct on the defendant's part.[6] *Commonwealth* v. *Arone*, 265 Mass. 128. Therefore, the judge correctly denied the defendant's motion for a directed verdict on the manslaughter charge.

3. The defendant argues on his motions for a new trial, that his conviction on the charge of manslaughter should not be allowed to stand because it is legally inconsistent with his acquittal on the charge of operating a motor vehicle so as to endanger the public. Since the lesser crime of driving to endanger, G. L. c. 90, § 24 (2) (a), only requires proof of ordinary negligence, whereas manslaughter requires proof of reckless and wanton conduct, *Commonwealth* v. *Welansky*, 316 Mass. 383, the defendant contends that his acquittal on the lesser charge precluded the verdict of manslaughter.

However, our examination of the judge's instructions, to which the defendant did not object, leads us to conclude that these verdicts were not inconsistent. The instructions [7] suggested to the jury that operating so as to

---

[6] The jury had other evidence of the defendant's reckless conduct before them. The defendant had two drinks a few hours before the accident and was seen driving without headlights past the scene of the accident one-half hour after it occurred. There was no evidence of tire marks at the scene of the hit-and-run accident to indicate that the operator had tried to avoid the accident by using his brakes or swerving toward the open road. Further evidence is found in the damage to the front end of the car and the driver's failure to stop after hitting the victim.

[7] "Now, in relation to the offenses charged and taking them in the category of their seriousness, there is the offense charged of driving on a public way negligently so that the lives and safety of the public might be endangered. . . . [I]f the operation of the car was negligently performed, he can be found guilty of this charge. *"If otherwise you find, he is to be found not guilty"* (emphasis supplied).

On the charge to the jury on manslaughter, the judge noted that it was a more serious crime which the prosecution must establish by proof of a "death caused by wanton or reckless conduct. The distinction here is the proof of wanton and reckless conduct as distinguished from ordinary negligence. The mere showing of ordinary negligence is not enough to prove criminal liability."

Commonwealth *v.* Rand.

endanger was the less serious of the alleged offences and that manslaughter was the more serious. The jury could have believed from these instructions that they had to decide between one of the two crimes if they found the defendant guilty. If the defendant was only negligent, he was guilty of operating to endanger. The instructions given by the judge, "[i]f otherwise . . . he is to be found not guilty" (see fn. 7), could have suggested to the jury that if they considered the defendant's conduct to be reckless and wanton, they had to find him not guilty of the lesser crime of operating to endanger and guilty of the more serious crime of manslaughter. The judge's instructions make it clear that manslaughter is a more serious charge but nowhere do they indicate that a finding of guilty on the more serious charge mandates a guilty verdict for the lesser crime of operating so as to endanger.

Thus, we are faced with a situation like that in *Commonwealth* v. *Peach,* 239 Mass. 575, where the court expressly instructed the jury to choose between the two crimes. Since the judge's unchallenged instructions[8] in this case render the jury's verdicts consistent with each other, the judge correctly denied the defendant's motions for a new trial. *Commonwealth* v. *Peach, supra,* 581.

*Judgments affirmed.*

---

[8] The correctness of such instructions is not before us. Since there were no objections to them, they constituted the law of the case.