COMMONWEALTH *vs.* STANLEY L. PIGNONE.

Middlesex.    April 17, 1975. — August 7, 1975.

Present: ROSE, KEVILLE, & GRANT, JJ.

*Search and Seizure. Probable Cause. Constitutional Law,* Search and seizure.

This court would not reach the question whether the rule of *Commonwealth* v. *Antobenedetto,* 366 Mass. 51 (1974), should be applied retroactively where evidence introduced at a hearing on a motion to suppress evidence seized without a warrant was such as to sustain any burden the Commonwealth may have had to establish the legality of the seizure. [407-408]

In a larceny trial, evidence that a supermarket cashier admitted to a police officer charging the defendant for less than the value of a large quantity of groceries, as prearranged with the defendant, that the cash manager of the store told the officer he had witnessed the transaction, that the store manager showed the officer the register tape and pointed out the defendant's car, and that the officer looking with a flashlight through the window of the car observed groceries exceeding in value the amount paid to the cashier by the defendant warranted a finding that the officer had probable cause to believe that the groceries were stolen property. [408-409]

At a hearing on a motion to suppress evidence which had been seized without a warrant from an automobile, evidence that the defendant had been alerted he was under suspicion, that the defendant was not under arrest, and that the automobile and its stolen contents were movable for a period of time supported a finding that exigent circumstances justified the warrantless seizure of the car and its contents. [409-414]

INDICTMENT found and returned in the Superior Court on December 8, 1970.

A motion to suppress was heard by *Ponte*, J., and the case was tried before him.

*Donald L. Conn & James B. Krasnoo* for the defendant.

*Terence M. Troyer*, Assistant District Attorney (*Bonnie H. MacLeod-Griffin*, Assistant District Attorney, with him) for the Commonwealth.

ROSE, J.   The defendant, convicted of larceny of goods over the value of $100 (G. L. c. 266, § 30), brings this case before us on a bill of exceptions pursuant to G. L. c. 278, § 31. He challenges the denial of his motion to suppress evidence obtained by means of a warrantless seizure from his automobile.

This case has had an involved history. The defendant's initial motion to suppress (considered on a statement of agreed facts[1]) was allowed[2] and the indictment dismissed. The Commonwealth appealed that ruling, and the Supreme Judicial Court reversed the order allowing the motion to suppress and remanded the case to the Superior Court for further proceedings. *Commonwealth* v. *Pignone*, 361 Mass. 566, 569 (1972). On June 13, 1972, the defendant renewed his motion to suppress. Following a hearing, the trial judge (who was not the judge who had ruled on the previous motion to suppress) denied the motion. An exception was taken, and it is that exception which the defendant now brings before us. On June 22, 1972, a jury found the defendant guilty.

The evidence concerning the crime was as follows. On October 14, 1970, the defendant went "shopping" in the

---

[1] The facts of the case now before us differ in some respects from those submitted on the statement of agreed facts at the first suppression hearing and considered on the prior appeal. *Commonwealth* v. *Pignone*, 361 Mass. 566 (1972).

[2] That ruling by the Superior Court judge was apparently made on the erroneous basis that a warrantless search of an automobile could only be conducted when incident to a lawful arrest. See *Commonwealth* v. *Pignone, supra,* at 568.

Purity Supreme Supermarket in Wayland. The defendant brought the items he had selected to the check-out station of a certain cashier. The cashier passed the items by her register, told the defendant, "Get ready for a surprise," and totalled the purchase at $4.42. The defendant gave the cashier a twenty dollar bill. The cashier dropped the receipt on the floor. The groceries (requiring seven bags) were put in the defendant's car, which was parked in the supermarket parking lot.

The cash manager of the supermarket (who was not on duty but was himself shopping in the store) observed the large order of groceries passing through the cashier's station and the $4.42 total that was rung up. He alerted the store manager, and the cashier was confronted and the tape retrieved. The value of the groceries was later computed to be $108.54.

After he left the store, the defendant, having noticed activity at the check-out counter, went to a telephone booth ten feet from the supermarket, called the store manager, explained that a mistake had been made, and sought to settle the matter. He met the store manager in front of the supermarket. During the course of their "negotiations," police officer Thomas H. McEnany, Jr., of the Wayland police force arrived.

The following evidence was introduced at the suppression hearing. McEnany testified that he arrived at the Purity Supreme Market between 8:00 P.M. and 8:30 P.M. and parked close to the defendant's car. He overheard part of the conversation between the defendant and the store manager in which they were trying to determine the amount underpaid by the defendant. McEnany spoke to the cash manager,[3] who told him he had witnessed the cashier ring up $4.42 for a quantity of groceries greatly in excess of that value. McEnany next spoke with the store manager, who told him that the defendant had articles

---

[3] It is not entirely clear from the substitute bill of exceptions whether McEnany overheard the conversation between the defendant and the store manager before or after he spoke with the cash manager.

which were the property of the store and that the articles had been passed through the check-out counter without being paid for. The store manager showed McEnany the cash register tape and told him to look inside the defendant's car and "see if you can buy that for $4.42." McEnany looked into the car with the aid of a flashlight and observed four bags of groceries in the front seat, articles on the floor, and three bags in the back seat. McEnany testified that he added up the value of marked items showing from the tops of the bags, and that the total was more than $4.42. The cashier admitted to him that she had "pushed it through" and identified the cash receipt tape as representing the amount of money paid by the defendant. McEnany testified that he then informed the defendant he was not under arrest, but asked him to remain at the scene.

Thirty to forty-five minutes after McEnany's arrival, a second police cruiser arrived. The defendant and the cashier were placed in the back of the second cruiser, which started toward the Wayland police station. Before they left the parking lot, the defendant requested that he be taken back to his car, and this was done. Three more police vehicles ultimately arrived on the scene and parked in close proximity to the defendant's car. It appears that four, or perhaps five, police vehicles surrounded the defendant's car, although McEnany testified that he felt that, with some maneuvering, the defendant could have left in his vehicle.

At some time after McEnany had been joined by additional police officers, the police were told by the cashier that the defendant had spoken to her a week earlier and had arranged for her to push items through the register at less than their full price. She stated she had done so on the night in question and had kept the cash register tape herself. At about 10:00 P.M., six of the police officers conferred,[4] and the defendant's car was entered and the groceries seized. No warrant to seize the groceries had been

---

[4] Detective Driscoll of the Wayland Police Department testified that he suggested to his fellow officers that a search warrant be obtained.

obtained and the defendant had not been placed under arrest.[5]

1. We consider first the defendant's argument that the burden of establishing the reasonableness of this warrantless seizure was on the Commonwealth. On the previous appeal of this case, the Supreme Judicial Court placed upon the defendant the burden of proving that the police lacked probable cause to search his car.[6] *Commonwealth* v. *Pignone,* 361 Mass. 566, 568 (1972), citing *Commonwealth* v. *Fancy,* 349 Mass. 196, 202 (1965), and *Commonwealth* v. *Colella,* 360 Mass. 144, 151 (1971). That ruling was in conformity with the state of the law in the Commonwealth at that time. See *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 56 (1974), citing *Commonwealth* v. *Roy,* 349 Mass. 224, 229 (1965), *Commonwealth* v. *LePage,* 352 Mass. 403, 411 (1967), *Commonwealth* v. *Hanger,* 357 Mass. 464, 468 (1970), and *Commonwealth* v. *Andrews,* 358 Mass. 721, 722-723 (1971). The Supreme Judicial Court has since departed from that position, holding in *Commonwealth* v. *Antobenedetto, supra,* at 57, that the Commonwealth has the burden of proving the legality of a warrantless search. See also *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 279 (1974).

The defendant urges that we apply the rule of the *Antobenedetto* case retroactively and order a new hearing on the motion to suppress.[7] However, we need not reach the question whether that case has retroactive application (but contrast *Commonwealth* v. *Silva,* 366 Mass. 402, 410 n. 3, and *Commonwealth* v. *Harris, ante,* 343 [1975], with *Commonwealth* v. *Forde,* 367 Mass. 798, 823-824 [1975] [Quirico, J., dissenting]), because in any event the evidence

---

[5] There was no evidence that the defendant consented to the seizure.

[6] It appears that the allowance of the initial motion to suppress was not pursuant to a determination that the police lacked probable cause. See n. 2, *infra.*

[7] The defendant has consistently argued throughout the course of these proceedings that the burden of proving the legality of a warrantless search and seizure is on the Commonwealth.

introduced at the hearing on the second motion to suppress
was such as to sustain any burden the Commonwealth may
have had to establish the legality of the seizure of the
groceries from the defendant's car. Compare *Common-
wealth* v. *Cavanaugh, supra.*

2. The defendant argues that the police lacked probable
cause in this case. The United States Supreme Court in
*Carroll* v. *United States,* 267 U. S. 132, 149 (1925), defined
probable cause as a "belief, reasonably arising out of cir-
cumstances known to the seizing officer, that an automobile
or other vehicle contains that which by law is subject to
seizure."

McEnany, the first police officer to arrive at the scene,
received the following information shortly after his arrival.
The cashier admitted that she had "pushed" the items
through and had only rung up $4.42. The cash manager
told him that he had witnessed the entire "transaction."
Finally, the store manager showed him the register tape,
pointed out the defendant's car, and informed him that the
car contained groceries belonging to the store. McEnany
observed the seven bags of groceries in the car by looking
through the window with the aid of a flashlight,[8] and a
quick addition of the visible price tags indicated that the
value of the goods was in excess of $4.42.

From that time McEnany had probable cause to believe
that the groceries were stolen property.[9] Additional infor-
mation bearing on probable cause was received after other

[8] The defendant does not contest the constitutionality of this viewing
of the interior of the car (see generally *Commonwealth* v. *Haefeli,* 361
Mass. 271, 280 [1972]; *Commonwealth* v. *Cavanaugh,* 366 Mass. at 282-
283) and, therefore, we do not consider that question. Rule 1:13 of
the Appeals Court, *post,* 801.

[9] We need not reach the question raised by the defendant whether
there was also probable cause to believe that the defendant was re-
sponsible for the larceny of the goods. The police had, at the least,
probable cause to believe that the cashier had stolen the goods, because
she had confessed as much. The groceries were thus subject to seizure
as stolen property. See *Boyd* v. *United States,* 116 U. S. 616, 623
(1886); *Warden, Maryland Penitentiary* v. *Hayden,* 387 U. S. 294, 302-
303 (1967).

policemen had arrived, and probable cause continued to exist at the time the goods were seized.

3. Finally, the defendant argues that even if probable cause existed to believe the goods were stolen, there were no exigent circumstances to justify their warrantless seizure. Probable cause is not in itself sufficient to insulate a warrantless seizure from a Fourth Amendment challenge. Once probable cause is found, the Fourth Amendment inquiry must turn to the justification for dispensing with a warrant. *Commonwealth* v. *Barnes,* 2 Mass. App. Ct. 357, 360 (1974). As the United States Supreme Court stated in *Chambers* v. *Maroney,* 399 U. S. 42, 51 (1970), "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." See also *Commonwealth* v. *Haefeli,* 361 Mass. 271, 275 (1972); *Commonwealth* v. *Rand,* 363 Mass. 554, 556-557 (1973); *Commonwealth* v. *DuPont,* 2 Mass. App. Ct. 566, 569 (1974). See generally, Note, Warrantless Searches and Seizures of Automobiles, 87 Harv. L. Rev. 835, 837-845 (1974).

Although the issue whether there were exigent circumstances justifying the decision of the police not to obtain a warrant was not considered by the Superior Court, a new hearing is not required. Having made an independent review of the evidence introduced at the suppression hearing (as set out in the substitute bill of exceptions), we hold that exigent circumstances, sufficient to justify the warrantless seizure, did exist at a critical time in the police investigation of the defendant's car.

Although there is a constitutional difference between houses and cars for the purposes of the Fourth Amendment (see *Carroll* v. *United States,* 267 U. S. at 153; *Chambers* v. *Maroney, supra,* at 48; *Coolidge* v. *New Hampshire,* 403 U. S. 443, 474 [1971]; *Cardwell* v. *Lewis,* 417 U. S. 583, 589 [1974]; *Commonwealth* v. *Cavanaugh, supra,* at 282; *Commonwealth* v. *Navarro,* 2 Mass. App. Ct. 214, 218-219 [1974]), the warrant requirement cannot be dispensed with solely for the reason that a car is involved. *Chambers* v. *Maroney, supra,* at 50; *Coolidge* v. *New Hampshire, supra,*

at 461-462.[10] *Commonwealth* v. *Dupont,* 2 Mass. App. Ct. at 569. Warrantless searches and seizures "are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions,"[11] *Coolidge* v. *New Hampshire, supra,* at 454-455, quoting *Katz* v. *United States,* 389 U. S. 347, 357 (1967), which are "jealously and carefully drawn." *Coolidge* v. *New Hampshire, supra,* at 455, quoting *Jones* v. *United States,* 357 U.S. 493, 499 (1958). Both the Commonwealth and the defendant confine the discussion of the question of the justification for dispensing with a warrant solely to the "exigent circumstances" exception, as that exception has developed in recognition of the mobile nature of the automobile and the attendant difficulties involved for the police to secure a warrant. We similarly confine our consideration of the justification for dispensing with a warrant to that exception.[12]

That exception was first articulated by the Supreme Court in *Carroll* v. *United States, supra,* a case in which a warrantless search of an automobile was upheld upon a finding of probable cause and the additional circumstances that the automobile was stopped on a highway where it was not practical to secure a warrant and that it contained

---

[10] But see Mr. Justice White's dissent in the *Coolidge* case, at 524; "[a]s in the case of an arrest and accompanying search of a person, searches of vehicles on probable cause but without a warrant have been deemed reasonable within the meaning of the Fourth Amendment without requiring proof of exigent circumstances beyond the fact that a movable vehicle is involved."

[11] See *Commonwealth* v. *Silva,* 366 Mass. 402, 404-405 (1974). See also *United States* v. *Baker,* 377 F. Supp. 102, 105-106 (D.S.D. 1974), where the court found that there are "four generally recognized exceptions to the requirement that search of an automobile must be pursuant to a valid warrant . . . (1) the plain view doctrine, (2) protection of the public from a weapon reasonably believed to be in the automobile, (3) a search incident to a lawful arrest, and (4) the existence of exigent circumstances."

[12] The Commonwealth has not argued the "plain view" exception, perhaps because the police did not "inadvertently" come upon the groceries as a result of some otherwise justifiable intrusion. See *Coolidge* v. *New Hampshire,* 403 U. S. at 466-471; *Commonwealth* v. *Rand,* 363 Mass. at 557; *Commonwealth* v. *Anderson,* 366 Mass. 394, 401 (1974).

contraband which could easily have been removed or destroyed. *Id.* at 153-156. "*Carroll* ... holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." *Chambers* v. *Maroney*, 399 U.S. at 51, quoted in *Commonwealth* v. *Haefeli*, 361 Mass. at 277. See also *Commonwealth* v. *Avery*, 365 Mass. 59, 64-65 (1974); *Commonwealth* v. *DuPont*, 2 Mass. App. Ct. at 569-571.

The factors constituting exigent circumstances in the automobile context have been variously defined and include the mobility of the automobile,[13] the awareness by the occupant of police suspicion, (*Chambers* v. *Maroney, supra,* at 51), the likelihood of an accomplice in the area who could move the car (*Coolidge* v. *New Hampshire, supra,* at 462; *Commonwealth* v. *Navarro*, 2 Mass. App. Ct. 214, 222 [1974]), the likelihood that the items sought will be removed or destroyed, (*Commonwealth* v. *Haefeli, supra,* at 281; *Commonwealth* v. *Rand*, 363 Mass. at 560-561; *Commonwealth* v. *Avery, supra,* at 64), and the inconvenience of posting a guard (*Coolidge* v. *New Hampshire, supra,* at 462; *Cardwell* v. *Lewis*, 417 U. S. at 594-595). An additional consideration is whether probable cause existed for a substantial time prior to the initial detention of the automobile, thereby affording the police an opportunity to obtain a warrant and negating the exigencies of the moment. See *Coolidge* v. *New Hampshire, supra,* at 460;

---

[13] We assume that it is the potential of a vehicle actually to be moved in a given situation with which we are concerned, and not some mobility inherent in the automobile. *Preston* v. *United States*, 376 U. S. 364, 368 (1964). See *Coolidge* v. *New Hampshire*, 403 U. S. at 461, n. 18, where Mr. Justice Stewart, speaking for the court, stated: "In this case, it is, of course, true that even though Coolidge was in jail, his wife was miles away in the company of two plainclothesmen, and the Coolidge property was under the guard of two other officers, the automobile was in a literal sense 'mobile'. A person who had the keys and could slip by the guard could drive it away. We attach no constitutional significance to this sort of mobility." But see *Id.* at 527 (White, J., dissenting). See also Note, 87 Harv. L. Rev., *supra,* at 842-845.

*United States* v. *Collins,* 439 F. 2d 610, 616 (D.C. Cir. 1971); *Commonwealth* v. *Rand, supra,* at 560; *Commonwealth* v. *Avery, supra,* at 64-65. But see *Cardwell* v. *Lewis, supra,* at 595-596.

In the case of *Chambers* v. *Maroney, supra,* the United States Supreme Court held that where the police stop and may search an automobile under the *Carroll* rule, they may then seize it and, if probable cause remains, conduct the search at a later time at the police station, still without the requirement of a warrant.[14] This Commonwealth has not found it necessary to impose a stricter rule. *Commonwealth* v. *Rand, supra,* at 556-561. *Commonwealth* v. *Barnes,* 2 Mass. App. Ct. 357, 360 (1974). The Supreme Judicial Court has interpreted the *Coolidge* case as holding that the proper test of the validity of such a warrantless station house search is whether exigent circumstances exist "at the time the car was stopped and not at the time the car was actually searched at the police station." *Commonwealth* v. *Rand, supra,* at 555.

As the *Rand* case implies, the rationale for this principle of law is not that exigent circumstances still persist once an automobile has been impounded by the police. See also *Preston* v. *United States,* 376 U. S. 364, 368 (1964). Cf. Comment, 47 Notre D. Law. 668, 671. The United States Supreme Court, in *Coolidge* v. *New Hampshire,* 403 U. S. at 463 n. 20, analyzed the *Chambers* case accordingly, stating "[i]t is true that the actual search of the automobile in *Chambers* was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any 'exigent circumstances' had passed, and, for all the record shows, there was a magistrate easily available." Quoted in *Commonwealth* v. *Rand, supra,* at 559. Rather, the rationale of the *Chambers* case[15]

---

[14] It is necessary to distinguish those cases in which the police impound an automobile in a caretaking or custodial role. See *Cady* v. *Dombrowski,* 413 U.S. 433 (1973). See also *Cooper* v. *California,* 386 U. S. 58 (1967); *Harris* v. *United States,* 390 U. S. 234 (1968).

[15] But see, Note, 87 Harv. L. Rev., *supra,* at 844.

Commonwealth *v.* Pignone.

appears to be that no additional intrusion for Fourth Amendment purposes exists in a later warrantless search of the car at the police station, because the police may choose to seize and hold the car rather than to conduct an immediate search, and the station house search of the car is a lesser intrusion, included in the seizure of the car itself.[16]

The principle of the *Chambers* case would also appear to be applicable to the situation where the police immobilize a vehicle by means other than transporting it to the police station, and then search it without a warrant. Extending the reasoning of the United States Supreme Court in *Chambers,* we see no difference for constitutional purposes between a search and seizure following immobilization of the vehicle by the police at the spot where it was originally detained, and a search and seizure following immobilization at the station house.

Exigent circumstances existed in this case until the time the vehicle itself was immobilized. While McEnany was alone and for a period after some additional police arrived on the scene, the circumstances were such that the defendant was alerted, he was not under arrest, and the car and its stolen contents were movable. Contrast *Haefeli* v. *Chernoff,* 394 F. Supp. 1079, 1084-1085 (D. Mass. 1975). It appears, however, that at the time the groceries were actually seized, four or perhaps five police vehicles were parked in close proximity to the defendant's car. The car was virtually surrounded, from which we conclude that the vehicle was effectively immobilized by the police at that

---

[16] The majority stated in *Chambers* that "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." *Chambers* v. *Maroney,* 399 U. S. at 52. But see Mr. Justice Harlan's dissent in which he argues that seizing the automobile pending a judicial determination of probable cause is a lesser intrusion for Fourth Amendment purposes. *Id.* at 61-65; 7 Akron L. Rev. 343, 351 (1974). See also *United States* v. *Van Leeuwen,* 397 U. S. 249 (1970); Comment, 47 Notre Dame Law. 668, 672-673 (1972); Note, 87 Harv. L. Rev., *supra,* at 845.

time. Immobilization in these circumstances was the constitutional equivalent of a seizure of the defendant's car by the police. It is not possible to pinpoint the exact time of that immobilization, or seizure. But, whenever it occurred, exigent circumstances were not extinguished until that moment, as the defendant was not under arrest throughout the course of this investigation, and was presumably free to move his car until the police blocked its movement. The presence of those exigent circumstances justified the warrantless seizure of the car (*Chambers* v. *Maroney*, 399 U. S. 42 [1970]; *Commonwealth* v. *Rand*, *supra*) as their presence also, alternatively, would have justified the immediate seizure of the stolen groceries. *Carroll* v. *United States*, 267 U. S. 132 (1925). *Commonwealth* v. *Haefeli, supra*.

The subsequent warrantless seizure of the groceries from the car is also constitutional. We uphold it on the basis of the exigent circumstances existing at the time of the immobilization, or seizure, of the car, and the continued existence of probable cause to believe the automobile contained stolen goods at the time those goods were actually seized. The car having been lawfully seized, the subsequent seizure of the groceries from inside the car constituted no additional intrusion for Fourth Amendment purposes under the rationale of the *Chambers* and *Rand* cases.

For the above reasons we rule that the seizure of the groceries from the defendant's car was lawful.

*Exceptions overruled.*