**COMMONWEALTH OF MASSACHUSETTS, Plaintiff**
vs.
**William M. DELLAMANO, Defendant**

No. 75751-52

Superior Court
Commonwealth of Massachusetts

**December 9, 1981**

**B. Morse, Asst. D./A.**, counsel for plaintiff.
**William Robinson**, counsel for defendant.

## FINDINGS AND RULINGS ON MOTION TO SUPPRESS

In March 1980 one Stephen E. Hill purchased a green 1965 Ford Mustang. Mr. Hill is presently and has been for some time an employee in an auto body shop and is skilled in auto body work. He rebuilt the Mustang, painted it candy apple red, installed new rugs, a new dashboard, new tires, new hub caps different from standard Mustang hub caps, and thereafter transferred it to one Donna Malone, his girlfriend.

On February 18th, 1981 the vehicle was stolen.

On March 19th, 1981 a Quincy police officer, Edward Weddleton, was sent to the West Quincy Fire Station in response to a call. There he met a Mr. Arthur, who pointed out a vehicle across the street in a large parking lot devoted to a private apartment complex, and Mr. Arthur said, "I blocked that vehicle; I think it is stolen."

The officer proceeded over to the red Mustang, which was then on private property but property to which business invitees had ready access. In fact the defendant, who claims to have purchased the vehicle at an arms-length transaction for nine hundred dollars from one James Thorne of Newbury Street in South Boston, had parked the vehicle there and had locked it, leaving open the vent window so that he might unlock it, he not having a key to the door. The apartment lot was one where his uncle resided and the vehicle had been parked there pursuant to prearrangement with the uncle.

While looking at the red Mustang with Mr. Arthur, Officer Weddleton was told by Mr. Arthur that the person who owned the car was coming. Mr. Hill arrived, told Officer Weddleton that, "My girlfriend owns it, it was mine earlier." Mr. Hill proceeded to point out the rugs, the dashboard, the seats, arguing to Officer Weddleton that he had put those in himself. He also made note of the tires and the hub caps and identified them.

The license then on the vehicle was 251 EFB. Officer Weddleton ran that number through the LEAPS computer system and received a negative response with respect to any vehicle with that license being stolen. Mr. Hill claimed that the plate had been replaced and gave Officer Weddleton another plate number which he, that is the officer, ran through the LEAPS computer and it came back with a report that the vehicle had been stolen.

Mr. Hill then opened the driver's side of the Mustang with a key that he had brought with him. He pointed out the vehicle identification number affixed to the driver's door. This number was different than the vehicle identification number which Mr. Hill claimed was the proper number for the car and which Mr. Hill had written down on a slip of paper he carried with him. Observation made by the officer at the time revealed that the vehicle identification number on the door had been affixed slightly askew and had been affixed with pop rivets rather than the commonly used star rivets. Moreover, inspection of the vehicle identification number on the door revealed it was slightly bent and not flat to the door. I draw this conclusion from the photographs in evidence on the motion to suppress and not from the vehicle identification tag as it was removed from the car later.

Officer Weddleton then got into the vehicle and observed the sticker. The vehicle identification number on the inspection sticker matched the one on the door. He then opened the glove compartment and observed the registration. The registration was in the name of the defendant. Dellamano, and also contained a vehicle identification number matching the one on the door.

Mr. Hill, claiming that the particular vehicle identification number on the door was in error, then proceeded around to the front of the vehicle and raised the hood, pointing out to the officer a vehicle identification number on the fire wall and on the motor itself, both of which matched each other and matched the one on the slip of paper brought by Mr. Hill.

Officer Weddleton called for a police tow truck which arrived and the vehicle was removed to police custody; he telling Mr. Hill that he was towing the vehicle for further investigation.

At the police station, or at a tow lot to which the vehicle was taken—I am a little unclear which—but, in any event, after it was reduced to police custody, photographs were taken of the vehicle identification number as it had been affixed on the door and on the fire wall and the vehicle identification number on the door was removed by the police.

The Commonwealth intends to introduce the photographs and the tag on the door itself in support of the two indictments now pending for trial.

None of the items are suppressed on the following rationale:

The Fourth Amendment has generally been taken to require that, to be reasonable, a search must be authorized by a warrant. 2 W. LaFave, SEARCH AND SEIZURE § 4.1, at 3 (1978). Exceptions to this rule are allowed, however, in certain exigent circumstances. See, **e.g.**, **Carroll v. United States,** 267 U.S. 132 (1925) (police may search an automobile on probable cause.)

The original justification for the automobile exception was based entirely on the automobile's mobility, and it allowed warrantless searches of automobiles when the police had probable cause to believe that a search would reveal that the law had been broken. **Carroll v. United States,** 267 U.S. 132, 153-55 (1925). Subsequent cases expanded this exception to uphold searches when the automobile's mobility was not a factor. See, **e.g., Chambers v. Maroney,** 399 U.S. 42 (1970) (approving warrantless auto search conducted at police station after arrest).

95 HARVARD LAW REVIEW, The Supreme Court, 1980 Term, 93, 251 n. 1.

In the circumstances of this case there is no complaint that the police were not properly on the premises of the apartment complex. Indeed, it has been held that the owner of a car has no reasonable expectation of privacy in the vehicle's exterior. **Cardwell v. Lewis,** 417 U.S. 583 (1973). But see, **Commonwealth v. Simmons,** Mass. Adv. Sh. (1981) 576, 578. The **Simmons** case, of course, can be distinguished on the ground that the police in that case intentionally set out with a witness to cause the witness to view a motor vehicle on private property; whereas in this case the police were summonsed by an alert and interested citizen and were responding to his request for investigation. Indeed, the involvement of concerned citizens here is what, without more, largely justifies the examination of the vehicle that was made.

It has long been settled that the Fourth Amendment of the United States Constitution applies only to searches and seizures taken by or at the direction of the state and, consequently, evidence obtained illegally by private parties and turned over to the police is not obtained in violation of the Fourth Amendment. **Commonwealth v. Storrela,** 6 Mass. Appeals Ct., 310 (1978), "It is no part of the policy underlying the fourth and fourteenth amendment to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals." **Coolidge v. New Hampshire,** 403 U.S. 443, 488 (1971). Accord, **Commonwealth**

**v. Ahern,** Sup. Ct. No. 80-520, reported in 1 Mass. Supplement at 435.

What was done here in opening the vehicle and in demonstrating to the police the location of the vehicle identification numbers, both on the door and under the hood, was nothing more than the entirely proper conduct of an individual intimately familiar with the motor vehicle attempting to aid the police and demonstrate the rightful owner. There was no search of these areas initiated by the police. The police merely looked as directed by one who showed more than probable cause of being in a position of acting on behalf of the owner.

Now that alone does not justify the opening of the glove compartment, but nothing turns on the opening of the glove compartment because there is no evidence sought to be suppressed arising out of such opening. Even if something did turn on it, neither that nor the subsequent taking of pictures and removal of the vehicle identification number from the door are suppressible because so long as the initial intrusion was justified, as it was here since it was made by the apparent owner of the vehicle, the later search at the police station was likewise justified. **Chambers** held only that, where the police may stop and search an automobile under **Carroll,** they may also seize it and search it later at the police station. **Coolidge v. New Hampshire** at 463; accord, **Commonwealth v. Rand** 363 Mass. 554, 560 (1973).

Therefore, since what was done at the time of the stop was fully justified, and since the search, that is the taking of the pictures and the removal of the vehicle identification number at the police station, was nothing more than corroborative of a search undertaken on behalf of the person who claimed to be an agent to the owner, it was fully proper that that later inspection and examination be done at the police station.

One last thing: The Commonwealth claims that **Commonwealth v. Haefeli,** 361 Mass. 271 at 284 and following stands for the proposition that the police may always search a motor vehicle to identify the rightful owner. I simply observe that the case does not appear to go that far, but instead relies significantly on the presence of exigent circumstances not present here.

While I reserve the right to expand upon the legal analysis, the facts stand as I have dictated them.

Mr. Robinson, your rights are saved.

**William G. Young**
**Justice of the Supreme Court**

I, KATHLEEN JEFFRIES, Voice Writer Reporter, do hereby certify that the dictation contained herein was recorded by me and thereafter transcribed by me and is a true and accurate transcription to the best of my knowledge.

**Kathleen Jeffries, Notary Public**