The Commonwealth appeals from a Superior Court judge's order allowing the defendant's motion to suppress.[2] The Commonwealth argues that the judge erred because the police officers had reasonable suspicion to stop the defendant's motor vehicle and conduct a threshold inquiry. For the reasons stated below, we conclude that there was error in the application of legal principles, and, thus, reverse the order allowing the defendant's motion to suppress.
Background. We summarize the judge's findings, supplemented by uncontroverted evidence from the hearing on the motion to suppress. See Commonwealth v. Watson, 430 Mass. 725, 726 n.5 (2000). On July 8, 2015, two Dunkin Donuts stores located in Brockton were robbed. An employee from the store that was first robbed reported that the robber was a black man about six feet tall, weighing 180 to 200 pounds. The employee also reported that the robber was wearing dark gray or black jeans, a sweatshirt with a light blue logo, and a ski mask. Another employee from that store reported that his mother saw a black male wearing a hoodie and a ski mask leave the store, enter a small blue vehicle, and drive away. Video surveillance recorded the robber wearing a hooded sweatshirt.
An employee from the store that was next robbed, which occurred about an hour and one-half after the first robbery, reported that the robber was a black male wearing a multi-colored mask and holding a handgun. The robber came to the drive-through window and instructed the employee not to push the panic button.[3] The robber then reached through the window, manipulated the register to open the cash drawer, and stole the cash inside the drawer. A surveillance camera recorded the robber wearing plastic gloves and a "very distinct red and black jacket." The store manager reported that the robber might be the defendant, who previously had been terminated as an employee at that store. Upon investigating the defendant, Brockton police Detective Thomas Hyland learned that the defendant lived in Brockton, that he weighed less than 180 to 200 pounds, and that his brother's girl friend (girl friend) owned a blue Honda motor vehicle.
On July 22, 2015, a third Dunkin Donuts store in Brockton was robbed by a black man wearing a ski mask and holding a handgun. Officers immediately went to the defendant's home, which was an approximate five minute drive from that Dunkin Donuts store, and observed a blue Honda motor vehicle, running and with its headlights on, in the driveway. The area was "very poorly lit." Brockton police Officer Brian Donahue, using his cruiser, blocked the Honda in the driveway, and reported to other officers that the vehicle's registration numbers matched that of the girl friend's motor vehicle. Brockton police Detective Michael Bunker could see a thin, black male sitting in the vehicle.
Upon approaching the vehicle, Detective Bunker, who was with another detective, observed the defendant's brother, Travone Hubbard, in the driver's seat and the defendant in the front passenger seat. The defendant was seen lowering his hands "below ... the area of the window, so [that Detective Bunker] couldn't see what [the defendant] was doing." The detectives identified themselves. Detective Bunker then ordered the defendant to place his hands on the dashboard because the movements of his hands were "concerning." Detective Bunker testified that, because the officers "were investigating an armed robbery where a handgun was used, ... [he] didn't know if [the defendant] was trying to access a weapon." The defendant complied with Detective Bunker's order but thereafter moved his hands again. Detective Bunker repeated several times his order that the defendant place his hands on the dashboard. One of the officers subsequently opened the passenger side door and the defendant was ordered out of the vehicle. The defendant did not immediately comply; rather, he tried to kick a black article of clothing under the front passenger seat. Officer Donahue forced the defendant out of the vehicle and read him his Miranda warnings. The defendant was pat frisked and approximately $272 were found in his pocket.
Upon searching the vehicle,[4] the officers found plastic gloves, sixty-five dollars, a red and black sweatshirt that matched the description of the robber's sweatshirt from the second Dunkin Donuts store robbery, and a black article of clothing, i.e., a stocking cap with the word "DOPE" written in white letters, that "matche[d] up with the picture" from the security footage of one of the robberies. The stocking cap was the item that the defendant attempted to kick under the seat. The total amount of cash found on the defendant and in the vehicle was less than the amount that was reportedly stolen from the third Dunkin Donuts store. No weapon was found inside the vehicle.
Video surveillance from the third Dunkin Donuts store robbery recorded the robber wearing dark pants with two vertical white stripes on the leg, and black and white sneakers. The defendant, at the time he was taken out of the vehicle, was wearing such pants and sneakers.
Discussion. When reviewing a motion to suppress, "we adopt the motion judge's factual findings absent clear error." Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008). Although we give the facts found by the judge deference, we "independently determine whether the judge correctly applied constitutional principles to the facts as found." Ibid. A police officer may make a threshold inquiry of an individual only if the officer has reason to suspect that the individual has committed, is committing, or is about to commit a crime. Commonwealth v. Willis, 415 Mass. 814, 817 (1993). "[A] combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief." Commonwealth v. Phillips, 452 Mass. 617, 626 (2008), quoting from Commonwealth v. Fraser, 410 Mass. 541, 545 (1991). A mere "hunch" is not enough for reasonable suspicion to exist. Commonwealth v. Torres, 433 Mass. 669, 673 (2001).
Here, the officers had ample information to reasonably suspect that the defendant had committed a crime. Contrary to the judge's conclusions, the officers' reasonable suspicion was not "based on no more than a hunch by the manager of the [second] Dunkin Donuts" and mere "speculation by the police that the blue car used by the robber" belonged to the girl friend "because they were both small, blue cars." The officers, in addition to obtaining the manager's statement and the information regarding the blue motor vehicle, found the defendant inside a blue Honda, parked in his driveway with its engine running and headlights on, and in close temporal and geographic proximity to the third Dunkin Donuts store robbery. See Commonwealth v. Warren, 475 Mass. 530, 536 (2016) ("[P]roximity of the stop to the time and location of the crime is a relevant factor in the reasonable suspicion analysis.... Proximity is accorded greater probative value in the reasonable suspicion calculus when the distance is short and the timing is close").
Furthermore, the officers also had information that the robber was familiar with the inside, employee area of the second Dunkin Donuts store due to the reports that the robber instructed an employee not to push the panic button, knew where the cash drawer was located, and knew how to open the drawer. This information was especially relevant as the defendant previously had been employed at that Dunkin Donuts store, adding another link in the chain connecting him to the robberies. All of this information, taken together with reasonable inferences, supported the officers' reasonable suspicion that the defendant and the blue Honda were involved in the Dunkin Donuts store robberies. Thus, the officers' stop of the vehicle, based on reasonable suspicion, was constitutional.
The Commonwealth next argues that the officers' exit order, subsequent pat frisk of the defendant, and search of the vehicle were constitutional due to safety concerns. We agree. There must be specific and articulable facts to support an exit order, however, "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns." Commonwealth v. Gonsalves, 429 Mass. 658, 664 (1999). "[W]hen approaching a stopped car, a police officer is to some degree impaired in seeing whether a person therein may be drawing a gun." Commonwealth v. Fitzgibbons, 23 Mass. App. Ct. 301, 306 (1986). In a justified stop, such as the one at issue here, "officers may take reasonable precautions for their own safety, including 'ordering occupants out of a car for questioning.' " Commonwealth v. Moses, 408 Mass. 136, 142 (1990) (quotation omitted). We do not require officers "to gamble with their personal safety." Ibid. (quotation omitted).
Here, there are a number of factors that, viewed together, justified the exit order: (1) the recent string of armed robberies of Dunkin Donuts stores in Brockton; (2) the temporal and geographic proximity of the stop to the third Dunkin Donuts store robbery; (3) the similarity between the robber's blue motor vehicle and the running blue Honda in the defendant's driveway; (4) the defendant's movements in that vehicle; and (5) the defendant ignoring an officer's repeated commands to place his hands on the vehicle's dashboard. Because the exit order was justified due to safety concerns, the subsequent search of the vehicle for weapons in the immediate vicinity of the defendant was constitutional for the same reasons. See id. at 144 (officers "may include a search extending into the interior of an automobile, but they are 'confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered' ") (quotation omitted).
Furthermore, there were sufficient exigent circumstances justifying the immediate, warrantless search of the motor vehicle, which the officers had probable cause to believe was involved in the armed robberies of the Dunkin Donuts stores. The officers had probable cause after they observed the defendant attempting to kick a black article of clothing under the front passenger seat and confirmed that the defendant was wearing identical clothing as the robber of the third Dunkin Donuts store robbery. Exigent circumstances arose from the following facts: the robber was armed at the time of the third Dunkin Donuts store robbery that occurred merely minutes before the stop; the defendant's uncooperative behavior; the black article of clothing in plain view inside the motor vehicle linking the defendant to the robberies; and the owner of the motor vehicle, the girl friend of the defendant's brother, could have moved the vehicle out of the jurisdiction or removed evidence from the vehicle before the officers could obtain a warrant. See Commonwealth v. Rand, 363 Mass. 554, 560 (1973) (exigent circumstances existed where "police were dealing with a vehicle [stopped on a public highway and] of unascertained ownership that could have been moved out of the jurisdiction at the owner's direction"); Commonwealth v. King, 389 Mass. 233, 238, 246-247 (1983) (exigent circumstances to search vehicle existed where armed driver had fired at troopers and fled, and defendant, a passenger in that vehicle, had been armed and was uncooperative); Commonwealth v. Scott, 29 Mass. App. Ct. 1004, 1007 (1990) (exigent circumstances existed where "[a]ny delay in determining ownership of the car could have had a detrimental effect on the ability of the police to apprehend the criminal while he could still be linked with his distinctive clothing").[5]
Order allowing motion to suppress reversed.

The appeal is interlocutory.

Information regarding the panic button was not included in the motion judge's findings, however, it was uncontroverted at the motion hearing. See Watson, supra.

The officers searched underneath the front passenger's seat, the vehicle's glove box, and the back pocket of the front passenger's seat.

We reject the defendant's request that the case be remanded for further findings and rulings on the events following the officers' stop of the motor vehicle. Based on the adequacy of the facts found by the motion judge as well as the uncontroverted evidence from the hearing on the motion to suppress, there is no need to remand for further findings.