Louis Joseph **ARATARI**, Petitioner,

v.

Harold J. **CARDWELL**, Warden, Respondent.

Civ. A. No. 72–264.

United States District Court,
S. D. Ohio, E. D.

Feb. 7, 1973.

John C. Nemeth, Columbus, Ohio, for petitioner.

William J. Brown, Atty. Gen., Thurman E. Anderson, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## OPINION AND ORDER

KINNEARY, Chief Judge.

Petitioner, a state prisoner, brings this action for a writ of habeas corpus under the provisions of Title 28, United States Code, Section 2241(c)(3).

This matter is before the Court on the petition, the return of writ and supplemental memoranda submitted by the parties. The parties have also entered into a stipulation as to certain facts which are before the Court.

Petitioner was convicted on December 16, 1969 on a five count indictment charging him with three counts of armed robbery in violation of Section 2901.-13 of the Ohio Revised Code, one count of intentional shooting in violation of Section 2901.23 and one count of auto theft in violation of Section 4549.04(A). Petitioner's conviction was affirmed by the Lucas County Court of Appeals. The Ohio Supreme Court dismissed his motion for leave to appeal on September 15, 1971 for want of a substantial constitutional question.

Petitioner contends that he is in the custody of respondent in violation of the Constitution of the United States in that:

1. He was denied a fair trial where the trial court refused to grant a motion for mistrial and severance based upon the misconduct and disruptions of a co-defendant.

2. Section 2931.22, Ohio Revised Code, is unconstitutional for the reasons that said section creates an irrebuttable presumption and denies him the benefits of proper venue in violation of due process.

3. There is no crime of "felony-shooting" and no elements of aiding and abetting were proven at trial.

4. There was no evidence of his participation in the armed robbery.

The Court determines that petitioner has exhausted his available state reme-

dies as required by Title 28, United States Code, Section 2254. The Court further determines that an evidentiary hearing is not required under the criteria of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

On July 18, 1969 petitioner, his codefendant Joe Mack Sparrow [1] and three other prisoners escaped from the Madison County Jail in Edwardsville, Illinois by seizing a jail guard as a hostage. The guard was released unharmed when the prisoners left the jail and they fled in a police car. Later, they abandoned the police car and seized a 1964 Volkswagen.

After several other stops, the prisoners eventually arrived in Toledo, Ohio. While in Toledo, they decided to rob a store because they did not have enough money to continue their escape. Petitioner contends that he remained in the back seat of the Volkswagon with another prisoner while the three remaining prisoners robbed the Lincoln Market. Petitioner contends that he declined to participate in the robbery because he considered himself a burglar and not an armed robber.

Shortly after the robbery, the car was recognized by the police as matching the description of the car used in the Lincoln Market robbery. After a gun battle and high speed chase similar to those sometimes seen in grade B gangster movies, the prisoners were apprehended by the police.

Only petitioner and Sparrow were brought to trial. Each defendant was represented by a court appointed attorney. Petitioner contends that he was denied his right to a fair trial because of the prejudicial conduct of Sparrow during the five day trial.

During the trial and in the presence of the jury, Sparrow repeatedly shouted insults and obscenities at the judge, witnesses, his own attorney and the prosecutor.[2] The judge was called,

---

1. His name appears as Joe Mack Sparrowk in the trial transcript.

2. The record indicates that petitioner made only one remark, other than his testimony

among other things, a "lesbian," "you broad" and "Geraldine." Witnesses were repeatedly called liars. Sparrow even insulted his own attorney and insisted on conducting his own defense. At one point in the trial, Sparrow tried to destroy an exhibit by tearing it. The trial judge noted on at least one occasion that Sparrow's antics were so loud that she had difficulty hearing testimony.

Sparrow's outbursts became progressively worse as the trial continued. In fact, these disturbances became so frequent that an additional court reporter was brought into the courtroom on the fourth day of trial because the original court reporter could not keep up with every thing that was happening. The supplemental transcript contains remarks by Sparrow which the original court reporter could not record when witnesses were testifying. In addition, Sparrow apparently made other gestures and remarks which are not mentioned in the trial transcript. Respondent contends that this Court cannot consider evidence of remarks which are not in the record. To do so, respondent argues, would violate the holding of Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). That case requires a petitioner to fairly present the substance of his federal claim to the state courts before seeking federal habeas corpus. However, petitioner raised his federal claim in the state courts. Respondent also argues that the record of a state trial court is not open to collateral attack. However, petitioner does not contend that the state court record is erroneous; he only contends that the record does not reflect remarks made by Sparrow which were not audible to the court reporter but could have been heard by the jury and gestures made by Sparrow. In any event, the presence or absence of this additional evidence would not affect the outcome of this case.

Petitioner's attorney entered frequent objections to Sparrow's antics and moved for a mistrial on several occasions. However, these motions were denied. The trial judge took no action to control Sparrow beyond an occasional instruction to the jury to disregard his activities.

■ ■ Petitioner contends that the trial judge committed prejudicial error when she refused to declare a mistrial and grant petitioner a separate trial. However, this Court does not believe that a defendant has a constitutional right to a separate trial even under circumstances as extreme as those in the case at issue. This Court does believe that petitioner's constitutional rights were violated by the failure of the trial judge to do anything to control Sparrow.

In Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Supreme Court stated that:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. 397 U.S. at 343, 90 S.Ct. at 1061.

In that case, the defendant became so disruptive that the judge ordered him removed from the courtroom during part of his trial. The Court held that this action did not violate the defendant's right to confront the witnesses against him. The Court then listed three ways for a trial judge to control a disruptive defendant:

> We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best

on the witness stand, during the trial. He objected when a witness described him as having "kinky" hair. Petitioner apparently regarded this statement as an

insult. Other than this one brief remark, petitioner did not engage in any disruptive conduct during the trial.

in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly. 397 U.S. at 343–344, 90 S.Ct. at 1061.

Each of the methods discussed in *Allen* had been used by other courts on prior occasions to control disruptive defendants. *See, e. g.,* United States v. Davis, 25 F.Cas. 773 (C.C.S.D.N.Y.1869) (exclusion of defendant from courtroom); People v. DeSimone, 9 Ill.2d 522, 138 N.E.2d 556, 562 (1956) (exclusion of defendant from courtroom); United States v. Bentvena, 319 F.2d 916 (2d Cir. 1963) (binding and gagging); People v. Kerridge, 20 Mich.App. 184, 173 N.W.2d 789 (1969) (binding and gagging); Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888) (contempt); *see also* 46 N.Y.U.L.Rev. 120 (1971). In fact, it has long been recognized "that courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect and decorum in their presence . . . ." Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821).

The primary purpose of a court system is to adjudicate controversies. The constitutional right to a fair trial means at a minimum that such adjudication must take place before an impartial judge and jury according to the requirements of due process and in an atmosphere of judicial serenity and calm. *See* Estes v. Texas, 381 U.S. 532, 85 S. Ct. 1628, 14 L.Ed.2d 543 (1965); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Illinois v. Allen, *supra.* The guilt or innocence of a defendant in a criminal trial must be determined by the jury's careful anaylsis of the evidence presented to it.

Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused, denies the latter due process of law. Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927).

This Court does not believe that the defendant in this case received a fair trial. The trial judge had the power to control Sparrow but she did not exercise that power. She did not warn Sparrow to remain silent, she did not threaten him with contempt or hold him in contempt, she did not have him removed from the courtroom when his disturbances became so loud that even the judge had difficulty hearing testimony and she did not have him bound and gagged. In addition, she could have granted petitioner's motion for a separate trial. *See* People v. Duplissey, 380 Mich. 100, 155 N.W.2d 850 (1968). The record does indicate that she did occasionally instruct the jury to disregard his remarks. However, in view of the prolonged and disruptive nature of Sparrow's activities, these occasional instructions were not sufficient to protect petitioner's constitutional rights. The jury in this case was exposed to at least as many distracting influences as the juries in *Estes* and *Sheppard, supra.*

This Court recognizes that a defendant could deliberately engage in disruptive activity in an effort to force a separate trial.[3] However, the proper response to such activity is to use one of the methods approved in Illinois v. Allen, *supra,* to control the defendant. To permit the kind of disruptions that occurred in this case without taking any action to control the unruly defendant would be an abdication of judicial responsibility.

Respondent contends that the disturbances in this case were no worse than

3. There is no evidence in the record which would suggest that petitioner conspired with Sparrow to produce these disturbances.

the disturbances in United States v. Aviles, 274 F.2d 179 (2d Cir. 1960) and United States v. Bentvena, 319 F.2d 916 (2d Cir. 1963). However, in Aviles, there was only one outburst during a trial that lasted three months as opposed to the almost continuous outbursts of Sparrow in the case at issue. In addition, the judge promptly instructed the jury to disregard the statements that were made.

In United States v. Bentvena, *supra*, the judge initially had the disorderly defendants removed from the courtroom. Later, after they returned, one defendant was bound and gagged when his disorderly conduct continued.[4] Therefore, in this case as in United States v. Aviles, *supra*, the judge took prompt action and was able to preserve order in the courtroom.

Finally, respondent contends that even if petitioner's constitutional rights were violated, any errors were harmless. Petitioner testified at his trial and admitted that he had escaped from jail in Illinois. However, he further stated that he did not approve of or participate in any of the offenses charged in the indictment. The record clearly indicates that petitioner remained in the car during the Lincoln Market robbery. On these facts, and given a trial atmosphere more condusive to a careful consideration of the issues, a jury could have determined that petitioner was not guilty of the offenses charged in the indictment. Given this possibility, this Court cannot find the error in this case to be harmless beyond a reasonable doubt. *See* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

The three remaining allegations in the petition are without merit. *See* Ballard v. Howard, 403 F.2d 653 (6th Cir. 1968).

Whereupon, the Court determines that the petition is meritorious and the writ is hereby granted.

Accordingly, it is ordered that petitioner be and he hereby is remanded to the Common Pleas Court of Lucas County, Ohio for such further proceedings, not inconsistent with this opinion as may be deemed necessary and proper in accordance with the law.

It is further ordered that if no action be taken by the State of Ohio within ninety days after the filing of this order either to appeal the decision of this Court or to grant petitioner a new trial, petitioner's release on the offenses charged in the indictment shall be final and unconditional.

It is further ordered that if the State of Ohio does appeal this decision the writ of habeas corpus shall issue ninety days after the issuance of the mandate by the Court of Appeals affirming this order unless within such ninety day period state officials initiate action for a new trial. If state officials initiate action for a new trial it is ordered that no writ of habeas corpus shall issue.

---

4. Much of the misconduct in this case occurred in the absence of the jury. For a full account of what happened and the judge's response to the disturbances *see* Panico v. United States, 291 F.Supp. 728 (S.D.N.Y.1968); Ormento v. United States, 328 F.Supp. 246 (S.D.N.Y.1971).