COMMONWEALTH *vs.* THOMAS L. BARNES
(and a companion case[1]).

Middlesex.    October 6, 1973. — June 12, 1974.

Present: ROSE, KEVILLE, & GOODMAN, JJ.

*Search and Seizure. Probable Cause. Constitutional Law,* Search and seizure. *Practice, Criminal,* Fair trial, Sequestration of witnesses, Judicial discretion. *Witness,* Redirect examination.

Where police, shortly after an affray and stabbing, had information showing that the occupants of a certain automobile had fled in it from the scene of the affray and that at least one of them had been a participant therein, and the police thereby had probable cause to stop the automobile on a highway and remove the occupants therefrom and arrest them, the police also had probable cause and justification, apart from the arrest, for a warrantless search of the automobile at the place it was stopped and for seizure of knives and clothing therein, and for a further search of the automobile at a police station to which it was taken and for

---

[1] Commonwealth *vs.* Clifton R. Locke.

seizure of weapons thereupon found, even if they had not ob-
tained, as they did, a search warrant before the further search.
[359-361]

In the circumstances, there was no merit in a contention by the de-
fendants in a criminal case that an "inaccurate representation" by
the prosecutor caused them to withdraw a motion to sequester
witnesses and that they were prejudiced thereby.  [361-362]

The extent to which a witness on redirect examination may be al-
lowed to testify as to matters not covered by his cross-examination
is within the discretion of the judge.  [362]

FOUR INDICTMENTS found and returned in the Superior
Court on December 15, 1971.

The cases were heard by *Coddaire*, J., without jury.

The cases were submitted on briefs.

*Alfred Paul Farese* for the defendants.

*John J. Droney*, District Attorney, *Terence M. Troyer
& Barbara A. H. Smith*, Assistant District Attorneys, for
the Commonwealth.

GOODMAN, J.   The defendants appeal under G. L.
c. 278, §§ 33A-33G, from convictions of assault and bat-
tery and assault with a dangerous weapon after a jury-
waived joint trial.   The following summary, taken from
the evidence and inferences therefrom, will serve as a
background for the three assignments of error argued by
the defendants.   On September 11, 1971, shortly after
4:00 P.M. as two cyclists were riding their motorcycles,
they were struck with what appeared to be a long stick or
an axe handle from a passing automobile which one of
them described as "bluish-green, aqua or something."
"[I]t stopped and four or five guys got out and started
running toward us."   There was a fight and a stabbing.
Both cyclists were taken to the hospital.   A resident in the
vicinity saw a young man, with a club, run and get into
an automobile on the driver's side.   The automobile
turned and drove off.   The young man had been standing
by another who was on the ground "with some blood."
The eyewitness noted the color of the automobile, "green-
ish-blue," and its registration number; he called the Con-
cord police.   Within a few minutes Officer Brooks of the

Acton police stopped the automobile and arrested the occupants. Upon receiving from the Concord police, by radio, information that a stabbing had occurred and that the automobile (including its color and registration number) involved in the incident was heading for Route 2A, Officer Brooks observed the automobile at the intersection of Concord Road and Route 2A, pursued it, and stopped it on Route 2A. Almost immediately thereafter, the Concord police arrived and Officer Alexander took two knives (one of which, on analysis, showed blood stains) from the glove compartment.[2] It appears that something less than one-half hour elapsed from the time of the incident to the time of the arrest. The automobile was towed to the Concord police station. The Concord police obtained a search warrant and made a further search; they seized various weapons.

1. During the testimony of Officer Alexander, the trial judge allowed a voir dire on the issue whether the seizure of the knives was the result of an illegal search of the automobile. No pre-trial motion to suppress had been made; but see Rule 101B of the Superior Court, as amended effective June 1, 1971. The defendants do not argue in their brief, nor did they at the voir dire, that the arrests were without probable cause. Their attack at the voir dire was based on the contention that, since they were handcuffed and outside the automobile during the search, it was not incidental to an arrest. This, however, is not the point. The threshold question in this case is whether there existed probable cause to search the automobile. "The proper inquiry . . . [is] whether the police

---

[2] He also seized jackets which were rolled up in the automobile. We treat these on the same footing as the knives, though the jackets were "in plain view." That did not affect their seizure since it did not add anything to the pre-existing probable cause vel non by which the seizure may or may not be validated. "[T]hat evidence is in plain view is not by itself legally significant." *Commonwealth* v. *Rand*, 363 Mass. 554, 557 (1973). Cf. *Commonwealth* v. *Haefeli*, 361 Mass. 271, 280 (1972).

had probable cause to search the automobile." *Commonwealth* v. *Pignone,* 361 Mass. 566, 568 (1972). In this case the circumstances which provided probable cause to arrest also provided probable cause to search. Where, as here, the occupants of an automobile were arrested upon probable cause to believe that they were fleeing in the automobile from the scene of a stabbing and assault, and that at least one of the occupants had been a participant, these facts also gave rise to probable cause to search the automobile for weapons and evidence of the crime. See *Chambers* v. *Maroney,* 399 U. S. 42, 47-48 (1970). In the circumstances of this case "there was a nexus between . . . [the defendants'] conduct and the vehicle" sufficient to give rise to probable cause to search the vehicle. *Commonwealth* v. *Avery,* 365 Mass. 59, 64 (1974).[3] See *Commonwealth* v. *Jackson,* 359 Mass. 759 (1971), and cases cited, in which this analysis is implied. Contrast *Commonwealth* v. *McCleery,* 345 Mass. 151 (1962); *Dyke* v. *Taylor Implement Mfg. Co. Inc.* 391 U. S. 216, 221-222 (1968).

Once probable cause to search is found, the inquiry turns to the justification for dispensing with a warrant. In this case the stopping of the vehicle on the open highway provides that justification. *Coolidge* v. *New Hampshire,* 403 U. S. 443, 479 (1971). *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 269 (1973). See *Commonwealth* v. *Avery, supra,* at 64-65, where some of the circumstances providing a justification for a warrantless search are similar to those in this case. Once a warrantless search is justified, there is no inhibition against deferring the search and conducting it at the station. *Commonwealth* v. *Rand,* 363 Mass. 554, 558-560 (1973). The search warrant which the police obtained after the

---

[3] In the *Avery* case the phrase "incidental to arrest" appears to have been eliminated in favor of a straightforward analysis in terms of probable cause and exceptional circumstances justifying a warrantless search. See *Commonwealth* v. *Haefeli,* 361 Mass. 271, 281 (1972); *Commonwealth* v. *Rand,* 363 Mass. 554, 560-561 (1973).

automobile was taken to the station was therefore super-fluous, and we need not consider the sufficiency of the affidavit before us on which the warrant was based and which the defendants attack. *Commonwealth* v. *Stevens,* 362 Mass. 24, 29 (1972). The trial judge therefore properly refused to suppress the items taken from the automobile and introduced in evidence.

2. The defendants contend that the prosecuting attorney's "inaccurate representation" caused them to withdraw their motion to sequester and resulted in prejudice.[4] The transcript does not bear out this charge. When the motion to sequester was made, the prosecuting attorney stated: "I don't think witnesses that I would have would really be witnesses that would have any effect corroborating each other. . . . The only witness [*sic*], I think, that would have any bearing on corroborativeness at all are two people that were at the scene in a fight." He undertook to keep those two separated. The defense attorney thereupon withdrew his motion to sequester "on that assurance." The defendants do not suggest that the two witnesses, the victims, were not kept separate; nor do they point to any testimony introduced for the purpose of corroboration. The defendants point only to a question by the prosecuting attorney to a police officer whether the prior testimony of another police officer as to a particular time refreshed his recollection. The police officer replied that it did not. The defendants do not argue that the prosecuting attorney acted in bad faith, and our examination of the transcript indicates that the witnesses (apart from the victims) called by the prosecution prior to the denial of the defendants' motion to dismiss testified to events occuring at different times or different places. However, there was always some

---

[4] Our consideration of the merits of this contention should not be construed as any indication that the motion to dismiss the indictments, by which the defendants sought to raise the contention, was appropriate.

danger of overlapping and had defense counsel pressed his original motion to sequester, it might well have been granted as a matter of discretion. Cf. *Commonwealth* v. *Blackburn,* 354 Mass. 200, 205 (1968). To the extent, if any, that there was some overlapping as the trial developed, it was incidental, and the court was well within its discretion in requiring the trial to continue.

3. The defendants complain that a question and answer on redirect examination of a prosecution witness went beyond matters raised on cross-examination. "The extent to which re-examination of a witness may be carried with reference to matters not testified to on cross-examination is within the discretion of the court." *Commonwealth* v. *Galvin,* 310 Mass. 733, 748 (1942). There was no abuse.

*Judgments affirmed.*