COMMONWEALTH *vs*. ROBERT E. LEE, JR.

Middlesex.     June 14, 1976. — July 19, 1976.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Practice, Criminal,* Comment by prosecutor, Mistrial.

The prosecutor's improper and prejudicial questioning of a defense witness at the trial of indictments charging the defendant with rape, an unnatural act, and kidnapping did not require a new trial where the witness's testimony was relevant only to two of the charges and the defendant was acquitted on those charges. [455-461]

INDICTMENT found and returned in the Superior Court on July 12, 1974.

The case was tried before *John P. Sullivan*, J.

*James M. Pool* for the defendant.

*Bonnie H. MacLeod-Griffin*, Assistant District Attorney, for the Commonwealth.

---

Commonwealth *v.* Lee.

HALE, C.J.   The defendant was tried before a judge and jury in the Superior Court on separate indictments charging rape, an unnatural and lascivious act, and kidnapping. He was acquitted on the first two charges, convicted on the third, and sentenced. The two assignments of error argued by the defendant are grounded on the judge's denial of motions for a mistrial. We find no error and affirm.

It appears from the evidence that in the early morning of May 21, 1974, the defendant entered a building in Cambridge in which the victim lived, made his way up a flight of stairs, and entered the victim's room. The victim awoke with a scream. The defendant told her who he was and that she "had done him an injury."[1] He then forced her to leave the building with him, only allowing her to put a raincoat on over her nightgown. He told her to tell the two other occupants of the house not to interfere or "someone would be hurt." The victim complied and told the others not to become involved. She was then taken to the defendant's car and told to get in. As the defendant drove to Boston, he told the victim he was going to hurt her because of the "injury." He also said he would shoot her. The victim was eventually taken to an apartment in Brighton which was occupied by one Marcia Greenwood, a business associate of the defendant. The victim testified in detail as to what took place in that apartment and as to what she had observed Greenwood doing during that time. The victim claimed she was forced into sexual acts, in between which she was further intimidated by the defendant's display of a pistol which he had requested Greenwood get for him. The next day the defendant took the victim back to her home in Cambridge and told her that if she went to the police, he would kill her.

---

[1] There was evidence that two weeks earlier the defendant and the victim had gone to Provincetown for a weekend, during which they had engaged in sexual activities. The victim claimed to have been forced into them, which the defendant denied. The defendant apparently complained of "injury" from the victim's reports to others of a claimed rape.

Commonwealth *v.* Lee.

Greenwood testified for the defendant and contradicted the victim's claim that she had been the unwilling companion of the defendant. Greenwood's testimony, if believed, supported the defendant's own testimony that the victim had been in the apartment of her own free will and had voluntarily slept with him. Greenwood also testified that there had been no firearm in the apartment.

On cross-examination by the prosecutor, Greenwood was asked several questions which were directed to a showing of bias on her part. Following those questions the witness was asked about the visit to her apartment of a police officer who had informed her that his purpose was to inquire about a matter which had happened in the apartment on the morning of May 21, 1974. She denied that she had refused to admit the officer, and that she had told him that she knew nothing about what had happened on that morning. She also denied having told the officer she was not in the apartment at that time.

Greenwood was then questioned about the officer's return to the apartment on the following day with other officers. During the cross-examination that followed the witness's affirmative answer to a question as to whether the officer had come the next day with a warrant (charging her as an accessory to certain crimes), the prosecutor posed questions to Greenwood about her own individual sex life. Pertinent parts of the cross-examination are set out in the margin.[2] At a bench conference which followed

---

2
THE PROSECUTOR:   "When they [the police officers] came in — that was about 3 o'clock in the afternoon?"
THE WITNESS:      "Approximately."
THE PROSECUTOR:   " — were you working in your apartment at that time?"
THE WITNESS:      "No."
THE PROSECUTOR:   "How were you dressed?"
THE WITNESS:      "I came to the door in a robe."
THE PROSECUTOR:   "In a robe?"
THE WITNESS:      "Yes."
THE PROSECUTOR:   "You weren't wearing a nightgown?"
THE WITNESS:      "No."
THE PROSECUTOR:   "And the police came into the apartment?"
THE WITNESS:      "Yes."

Commonwealth *v.* Lee.

that questioning, the judge strongly admonished the prosecutor that such questions were not proper and that he should limit his inquiry to matters tending to show bias or prior inconsistent statements.

The defendant then moved for a mistrial, asserting that the prejudicial effect of the questions coupled with the other evidence which had been introduced could not be cured by any instruction to the jury.

Following the bench conference the judge asked the jury to disregard the question and instructed them, as he had previously in his preliminary remarks, that questions are not evidence and that unless questions were answered, they should not be a factor in the jury's consideration.

The prosecutor then twice asked whether anyone else was arrested with Greenwood. The judge sustained objections to both questions and promptly told the prosecutor not to direct his questioning in "that general area." At

---

THE PROSECUTOR: "And they advised you you were under arrest?"
THE WITNESS: "Yes."
THE PROSECUTOR: "At some time shortly thereafter?"
[objection and exception]
THE WITNESS: "Yes."
THE PROSECUTOR: "And they told you what you were under arrest for at that time?"
[objection and exception]
THE WITNESS: "Yes."
THE PROSECUTOR: "At 3 o'clock in the afternoon, in your apartment?"
THE WITNESS: "Yes."
THE PROSECUTOR: "They told you. And then they searched the apartment, didn't they?"
THE WITNESS: "Yes."
                                   *       *       *
THE PROSECUTOR: "And they found someone in the closet in your bedroom, didn't they?"
[objection and exception]
THE WITNESS: "I was not in the bedroom at the time, so I don't know where."
THE PROSECUTOR: "Wasn't there a man in his late forties naked in your bedroom at that time?"
DEFENDANT'S
COUNSEL: "Objection, your Honor. Move to strike on the grounds of relevancy and immateriality to the case before the court."
THE JUDGE: "I will see you at the side bench."

the conclusion of that cross-examination the defendant renewed his motion for a mistrial, which was again denied.

Officer Gentile, of the Cambridge police, who had arrested Greenwood, was called as a rebuttal witness for the Commonwealth. After giving testimony which contradicted in many respects that of Greenwood as to what had happened in her apartment on the two occasions when he had been there, he testified further. Pertinent parts of that testimony are set out in the margin.[3] At the end of a bench conference that followed, the judge denied

---

3

| | |
|---|---|
| THE WITNESS: | "I went to the Boston Police Department and asked for assistance to make an arrest at 504 — 1082 Commonwealth Avenue, Apartment 504." |
| THE PROSECUTOR: | "At some time did you arrive in the section of Brighton?" |
| THE WITNESS: | "Yes." |
| THE PROSECUTOR: | "Please relate for us first who was with you and what you did." |
| THE WITNESS: | "With me at this time I had Detective Ellis from the Cambridge Police Department and two Boston police officers." |

\* \* \*

| | |
|---|---|
| THE PROSECUTOR: | "What happened when you went — Did you go to the door at 504?" |
| THE WITNESS: | "Yes." |
| THE PROSECUTOR: | "Tell his Honor and the jury what happened." |
| THE WITNESS: | "At approximately 3 o'clock, I went to Apartment 504 and knocked on the door. I heard some noise in there. I waited a few minutes, knocked again. Then I received an answer by Miss Greenwood. She asked me who it was. I told her it was the Cambridge police, Detective Gentile. She waited a few minutes, and then I heard locks being opened, and then the door was opened as far as the chain would allow. Then I identified myself again and showed her that I had a warrant for her arrest. She tried to close the door on me. I wouldn't let her. I forced my way in at this time — I had broke the chain, and I walked in there. |
| | As I was in there, I heard noise in the bedroom, so I ran into the bedroom with my gun drawn, and in the bedroom was a closet that was the length of the wall, a sliding closet; and as I looked there, I saw the door half-closed, and some clothes were shaking in the closet. I had my gun on the closet door, and I asked whoever was in there to come out by show- |

the defendant's second motion for a mistrial. He then instructed the jury at length on ways in which witnesses may be impeached. He also instructed: "Whatever Miss Greenwood was doing at the time of the arrest, whoever the gentleman was in her apartment, and whether he or she was arrested for that, is absolutely and positively irrelevant to any proceeding in this case. It certainly does not go to the substantive issues of the crimes ... [of] which the defendant stands charged, nor does it go to the matter of the credibility of Miss Greenwood."

The motions for mistrial were and are particularly appropriate vehicles by which to raise the effect of the prosecutor's excesses. See and compare *Commonwealth* v. *Red-*

|  |  |
|---|---|
|  | ing his hands first. And he did, he opened the door and he came out." |
| THE PROSECUTOR: | "Describe the individual who came out." |
| THE WITNESS: | "The individual was — " |
| DEFENDANT'S COUNSEL: | "Objection on the grounds of relevancy." |
| THE JUDGE: | "I don't think this is relevant. That's sustained." |
| THE PROSECUTOR: | "Is it fair to say that the individual who came out on the date in question was approximately in his late forties?" |
| THE WITNESS: | "Yes." |
| DEFENDANT'S COUNSEL: | "Objection to the form, as to the form of the question, as leading." |
| THE JUDGE: | "I don't think it's relevant. Objection is sustained." |
|  | *      *      * |
| THE PROSECUTOR: | "Then what did you do?" |
| THE WITNESS: | "Well, the man that was in the room I had left with the Boston police, and then I had gone back out into the living room where Marcia Greenwood was. I had showed her the warrant again, and I advised her of her rights. Then we took her and the man that was there to the Boston Police Headquarters, and she was arrested. She was arrested by Boston police for prosti — " |
| THE PROSECUTOR: | "No." |
| DEFENDANT'S COUNSEL: (At the Bench) | "Objection. Move to strike. May I see you at the side bar, please?" |
| DEFENDANT'S COUNSEL: | "Your Honor, based on the testimony of this witness, the defendant Lee once again renews his motion for a mistrial on the ground of prejudicing the jury." |
| THE JUDGE: | "I am not going to allow that, and I will give a curative instruction." |

*mond*, 370 Mass. 591, 593-596 (1976). While the irrelevant material disclosed by those questions and answers, viewed separately, might be regarded as harmless, their cumulative effect causes us concern.

The defendant contends that the intent and purpose of the cross-examination were to discredit Greenwood by suggesting to the jury that she was a woman of easy virtue, if not a prostitute. The prosecutor, despite the admonitions of the judge, persisted in lines of inquiry which were bound to elicit information which could not have been properly admitted for the purpose of impeaching Greenwood or showing bias on her part. Other questions sought answers which were relevant rebuttal but were inflammatory in nature and well beyond the scope permitted by the judge. On several occasions the judge acted to overcome the improper prejudicial effect of what was disclosed or suggested. He gave detailed instructions to the jury concerning information that might properly be elicited on cross-examination and informed them that what they had heard could not be considered as evidence bearing on the defendant's guilt or on Greenwood's credibility. While it would have been preferable for the judge to have given more succinct and positive instructions (compare *Commonwealth* v. *Paradiso*, 368 Mass. 205, 206, n.2 [1975]), we cannot assume that the instructions did not have their intended effect. *Commonwealth* v. *Eagan*, 357 Mass. 585, 589 (1970). The Supreme Judicial Court and this court have often refused to overturn convictions because of a judge's refusal to exercise his discretion to grant a mistrial where irrelevant harmful matters have been brought to the jury's attention but have been removed from the jury's consideration by appropriate corrective instructions. See *Commonwealth* v. *Paradiso, supra*, at 208; *Commonwealth* v. *Sandler*, 368 Mass. 729, 734-735 (1975). Contrast *Commonwealth* v. *Banuchi*, 335 Mass. 649, 654 (1957); *Commonwealth* v. *Welcome*, 348 Mass. 68, 70-71 (1964); *Commonwealth* v. *Nassar*, 351 Mass. 37, 45 (1966). "Errors are almost inevitable in any trial, improprieties almost unavoidable, but the presence

of one or the other furnishes no automatic signal for reversal and retrial." *Commonwealth* v. *Eagan, supra,* at 591. While the cumulative prejudicial effect of the matters improperly brought out before the jury approaches the outer limits of what a jury can be expected to disregard in response to a judge's instruction, we, as did the Supreme Judicial Court in *Commonwealth* v. *Richards,* 363 Mass. 299, 309-310 (1973), "feel safe in concluding on the whole that it is highly probable that the jury would have voted the same way" if they had not heard the material complained of.

We find strong support for this conclusion in the jury's discriminating verdicts. See *id.* at 309. Furthermore, Greenwood's testimony did not support the defendant's denial of the kidnapping charge. That charge was made out on the events which had taken place in Cambridge and which Greenwood did not witness. The evidence as to them had revealed that the victim had been forcibly removed from her bedroom, made to enter an automobile, and taken against her will over the river and into Boston. Two other witnesses corroborated the victim's account of her departure from the Cambridge apartment. Even the defendant failed to contradict the victim's account of those events. He testified that he told the victim that, despite her objections, she had to leave with him. Greenwood's testimony largely contradicted that of the victim and substantiated that of the defendant only as to what had occurred in the Brighton apartment. The attempt to discredit her does not appear to have caused the defendant any harm.[4] The jury obviously disbelieved the victim's

---

[4] The defendant's reliance on the rationale of *Commonwealth* v. *Manning,* 367 Mass. 605, 610 (1975), does not aid him. There the court held that, because it was error not to have permitted evidence of the victim's unchastity to impeach her testimony on a charge of rape, the defendant's convictions on other charges must be reversed as well. The rationale was that if the jury disbelieved the victim's testimony on the rape charge, they might well have disbelieved her testimony on the other charges also. In the present case, by contrast, the jury appear to have accepted Marcia Greenwood's and the defendant's testimony on the rape and unnatural acts charges and rejected that of the com-

testimony on the rape charge as well as that regarding the unnatural acts but believed her account of the kidnapping.

On the basis of the strong evidence in support of the kidnapping charge, the fact that the Greenwood testimony only concerned the events which took place in Brighton, and the jury's selectivity in rendering their verdicts, we conclude that no miscarriage of justice resulted and that the judge did not abuse his discretion in denying either motion for a mistrial. See *Commonwealth* v. *Paradiso,* 368 Mass. at 210.

*Judgment affirmed.*

---

plainant, and yet accepted the complainant's testimony as to what transpired in Cambridge. For these reasons the holding in the *Manning* case is inapplicable to the present case.