COMMONWEALTH *vs.* ANDREW FLOWERS
(and a companion case.[1])

Suffolk. June 7, 1977. — August 3, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Search and Seizure. Probable Cause. Practice, Criminal,* Assistance of counsel, Continuance, Trial of defendants together, Mistrial. *Constitutional Law,* Assistance of counsel.

Evidence at a hearing on a defendant's motion to suppress warranted findings that the stopping of the vehicle in which the defendant was a passenger by police officers was based on specific and articulable facts known to the officers, that the description given the police by witnesses provided probable cause to arrest the defendant, that the lawful custodial arrest of the defendant gave rise to the authority to search his person, and that the warrantless search of the automobile at the police station was justified by the circumstances that existed at the time of the initial stopping of the vehicle. [561-562]

In the circumstances, a judge did not err in allowing a defendant at a criminal trial to proceed without counsel and in refusing to grant a continuance once counsel had been allowed to withdraw to a consulting status. [562-566]·

At a criminal trial, the judge did not abuse his discretion in refusing to grant a severance to a defendant whose codefendant had elected to proceed pro se or in refusing to grant the defendant's motion for a mistrial based on his codefendant's disruptive conduct. [566-569] BROWN, J., concurring.

INDICTMENTS found and returned in the Superior Court on October 17, 1974.

Pre-trial motions were heard by *McLaughlin,* C.J., and the cases were tried before *McGuire,* J.

*Joseph F. Flynn* for Andrew Flowers.

*Margaret Hayman* for Mark White.

*Robert J. McKenna, Jr.,* Assistant District Attorney (*Eugene McAuliffe,* Assistant District Attorney, with him) for the Commonwealth.

---

[1] Commonwealth *vs.* Mark White.

HALE, C.J.    The defendants were convicted after a jury trial held subject to the provisions of G. L. c. 278, §§ 33A-33G, on separate indictments charging each with armed robbery. The defendant Flowers has argued three assignments of error; the defendant White one. There was no error.

We summarize the facts found by the judge together with additional evidence summarized from the transcript of the hearing on the defendants' motions to suppress. At approximately 7:00 P.M. on September 12, 1974, Detectives Accera and Graham of the Boston police department were patrolling along Dorchester Avenue in an unmarked police vehicle as part of an ongoing investigation by the robbery suppression unit of the Boston police department. Accera operated the vehicle, and Graham sat in the passenger's seat. Graham observed a two-tone (white top, blue bottom) 1974 Plymouth Fury automobile, Massachusetts registration 7T8189, parked in front of one of the stores which was under surveillance. He was aware that a motor vehicle fitting that description had been used in an armed robbery of a convenience food store in Hyde Park a week earlier. As the police vehicle passed the Fury, Graham saw that there were four occupants in the vehicle; the driver was a woman and the three passengers, one seated in the front and the other two in the back, were men. The police stopped their vehicle a short distance beyond the Fury and observed the two front seat occupants alight and walk into the store. The woman was later identified as one Grace Campbell. The man, later identified as Flowers, was wearing dark trousers, a dark shirt, and a dark vest. He had a short Afro style haircut. One of the men who had remained in the rear seat of the vehicle was wearing a pink hat and a pink shirt. Campbell and Flowers returned to the car empty-handed and drove away. Graham and Accera followed. The car then stopped in front of a second convenience store, and the same action was repeated. When Campbell and Flowers returned from the second store they entered their car and sped off up Dorchester Avenue toward Gallivan Boulevard, with the officers in pursuit. The police lost sight of the ve-

hicle when it turned off Dorchester Avenue into Gallivan Boulevard. At this time (approximately 7:20 P.M.) Graham gave a radio communication relative to the vehicle, and then returned to the area of the two convenience stores on Dorchester Avenue, where he remained until 9:10 P.M.

That evening one Bonvie and one MacLean were working as clerk-salesmen at a "Radio Shack" store on the American Legion Highway in Roslindale. Shortly before 8:30 P.M. Bonvie went out to a nearby store. After he had left, three black males entered the store. MacLean observed that one wore a pink hat and pink shirt. (We shall refer to that person as "X".) One wore dark clothing, a black sweater vest, and had short hair (later identified as Flowers by both Bonvie and MacLean). The third (later identified as White by Bonvie and MacLean) was shorter than the other two, had a medium Afro, dark clothing and a skin condition. The three men moved about the store looking at the merchandise. Bonvie returned to the store and X asked him for assistance. After answering X's question, Bonvie joined MacLean behind the counter. Flowers and X approached the counter, and X inquired about a layaway plan as White walked to the door. X then called to White and asked whether he had ten dollars. White then looked out the door and answered, "Yes." With that answer, Flowers drew a long-barreled gun, and X drew a short-barreled gun.

X directed Bonvie to open the cash drawer and put the money in a bag. He complied. MacLean, who had been ordered to lie on the floor behind the counter, responded to Flowers' demand for the rest of the money by leading him to the back of the store where loose and rolled coins were kept. MacLean unlocked a box which contained the change, and then Flowers rejoined X and White in the front of the store. The three men then left the store. On the way out X picked up some stereo equipment and took it with him.

After the robbers had left, Bonvie telephoned the police and gave a description of the three robbers. The police arrived at the store within minutes, and Bonvie and MacLean again described the three men. Bonvie reported to the police that four twenty dollar bills (one bearing the number

E 36), twenty singles, two fives, two or three tens, three Kennedy half dollars, several rolls of pennies, and several dollars in quarters, dimes, nickels and pennies had been taken. The police were also given a description of the two guns used by the robbers.

At 8:45 P.M. that evening Officer Chanette and two other officers were on patrol in the area of Columbia Circle when they received the radio communication relative to the armed robbery. At 9:10 P.M. they observed a 1974 Plymouth, blue with a white top, Massachusetts registration 7T8189, heading towards South Boston. There were three people in the vehicle (two in the front and one in the rear.) Chanette immediately pulled out behind the vehicle and caught up to it on Mt. Vernon Street as it headed into the Columbia Point housing project. The officers pointed their guns at the occupants of the Plymouth and motioned to the driver to pull over. After the car had stopped the occupants were taken from it. The operator was Grace Campbell. Flowers, the passenger in the front seat, was wearing dark clothing. White was in the rear of the car and was wearing dark trousers and a flowered shirt. Graham, who had been called by radio, arrived on the scene and frisked the two men. This search revealed no weapons, but three rolls of pennies were found on Flowers. Because a large crowd had formed at the scene, no search of the car was conducted. Campbell, Flowers and White were taken to the District 11 station. There Chanette looked into the car and observed and seized a short-barrel, loaded .22 caliber revolver, the butt of which was protruding from the cushions of the rear seat. At approximately 10:00 P.M. the defendants were taken by Graham to the Radio Shack, where they were confronted by MacLean. MacLean identified Flowers and White as being two of the three men who had robbed the store earlier that evening.

The defendants were then taken to the District 5 station, where complete searches of their persons were conducted. A twenty dollar bill, a ten dollar bill, seven one dollar bills, five dollars and nine cents in loose change, and two Kennedy half dollars were found on Flowers. A twenty dollar

bill (bearing the number E 36), two five dollar bills and sixteen one dollar bills were found on White.

### FLOWERS' CASE

1. Flowers assigns as error the denial of his motion to dismiss the indictments for failure to grant a speedy trial. We have examined the defendant's claim in light of the oft stated factors set out in *Barker* v. *Wingo,* 407 U. S. 514, 530 (1972), and have determined that there was no error. No useful purpose would be served by a detailed discussion of those factors and the now well known applicable law in this area.

2. Flowers next argues that the motion judge erred in finding that the stop of the car in which the defendant was a passenger, his subsequent arrest, and the search of the car were constitutionally permissible. Having first ruled that the burden of proving the reasonableness of the search was on the Commonwealth (*Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 56 [1974]), the motion judge made extensive findings of fact which we have summarized above and which were amply supported in the record. We are of the opinion that the motion judge correctly found and ruled (1) that the stopping of the vehicle was reasonably warranted based on "specific and articulable facts" known to the officers (*Terry* v. *Ohio,* 392 U. S. 1, 21 [1968]; see *Commonwealth* v. *Riggins,* 366 Mass. 81, 86 [1974]; *Commonwealth* v. *Ling,* 370 Mass. 238, 240-241 [1976]); (2) that the description given the police provided probable cause to arrest the defendant (see *Whiteley* v. *Warden, Wyo. State Penitentiary,* 401 U. S. 560, 564-569 [1971]; *Commonwealth* v. *Tarver,* 369 Mass. 302, 308 [1975]; contrast *Commonwealth* v. *Morales,* 4 Mass. App. Ct. 779 [1976]); (3) that the monies taken from the defendant's person need not be suppressed from evidence because the lawful custodial arrest gave rise to the authority to search (see *United States* v. *Robinson,* 414 U. S. 218 [1973]; *Gustafson* v. *Florida,* 414 U. S. 260 [1973]; *Commonwealth* v. *Tarver, supra,* at 309); and (4) that the warrantless search of the automobile at the police station was justified by the circumstances that

Commonwealth *v.* Flowers.

existed at the time of the initial stopping of the vehicle (see *Chambers* v. *Maroney,* 399 U. S. 42, 51 [1970]; *Commonwealth* v. *Rand,* 363 Mass. 554, 558-559 [1973]; *Commonwealth* v. *Barnes,* 2 Mass. App. Ct. 357, 361 [1974]; contrast *Commonwealth* v. *Antobenedetto,* 366 Mass. at 55).

3. The defendant claims that the judge erred in allowing him to proceed without counsel and in refusing to grant a continuance once counsel had been allowed to withdraw to a consulting status, alleging that in so doing the judge denied him counsel, thus depriving him of his rights under the United States Constitution and the Declaration of Rights of the Massachusetts Constitution.

From the record before us, all of which was before the trial judge with the possible exception of the transcript of the hearing on the motions to suppress, it can readily be determined that on June 3, 1975, the defendant was arraigned on the present charges, and an attorney was appointed to defend him (the same attorney was also representing the defendant in another case involving armed robbery which proceeded to trial on June 3, 1975, and concluded on June 18, 1975); that on November 19, 1975, the defendant filed a lengthy motion pro se, four paragraphs of which detailed, among other things, his claim that counsel had neglected to consult with and advise him and had failed to investigate and prepare a defense, the result of which was to deprive him of the effective assistance of counsel. He further contended in that motion that, because of his intention to bring a civil action against the attorney, that counsel's continued representation of him would create a conflict of interest. His motion concluded with a request that his counsel be dismissed. The motion was allowed, and his attorney withdrew. On that same day another attorney was appointed to represent the defendant (Rule 53 of the Superior Court [1974]).

From February 13, 1976, to February 18, 1976, a hearing on the defendant's motion to suppress evidence was held before the motion judge, at which hearing newly appointed counsel demonstrated a complete grasp of the facts and law of the case by his thorough cross-examination and his argu-

ments. Following that hearing the jury selection process began before the same judge. The defendant's attorney actively participated in this procedure, at the outset of which he made suggestions for questions to be put to the prospective jurors, all of which questions the judge adopted. The jury selection process concluded on February 19, at which time the judge found that there had been prosecutorial misconduct in the selection process and declared a mistrial. On April 5, 1976, the case was again called for trial. Appointed counsel was again present, prepared, and fully expecting to go to trial. Flowers had given no indication prior to April 5 that he was in any way dissatisfied with his attorney. His attorney had not been aware that Flowers did not want him as counsel until the morning of April 5, when trial was scheduled to begin. It was at that time that Flowers stated that he was going to change lawyers and that he did not want his attorney. On the court's being so informed the colloquy noted in the margin occurred.[2] Following the col-

2 THE JUDGE: "Did you make any effort to advise him [his attorney] prior to today that you did not want him as your lawyer?"
   THE DEFENDANT: "Yes, sir, every time I came into court. I ask the Clerk to get in touch with him but no one can get in touch with him."
   THE JUDGE: "Now you may have your choice. You may have Mr. Dawkins (the attorney appointed by the court on Nov. 19, 1975), a very capable lawyer, represent you in this trial, or, if you don't want him, you may try it yourself. You can't do both."
   THE DEFENDANT: "I don't want him."
   THE JUDGE: "I will ask Mr. Dawkins to remain in court to give you such advice and assistance as you wish. You are not required to consult him, but if you wish to consult him on any point during the trial, you may."
   THE DEFENDANT: "Yes, sir."
   THE JUDGE: "Otherwise, you may try your own case. You have that right."
   THE DEFENDANT: "Yes, sir."
   THE JUDGE: "Now, Mr. Flowers, I am going to advise you that the trial of a criminal case is a technical matter. In most instances it requires the advice and help of a person who had been appointed and becomes a member of the Bar and because of the procedure and the technicalities involved, it is usually to the benefit of a defendant to be represented by a lawyer and so, *before you say you are willing to proceed and try your own case, I strongly urge you to consider what I have been saying to you that may well be that you would be better off having the advice and help of a qualified lawyer to represent you during this trial.* Now because of that I will give you now an opportunity

Commonwealth *v.* Flowers.

loquy the judge made a specific finding that he had given the defendant the choice of proceeding either with his appointed counsel or pro se, having determined as a fact that the defendant's action was intended solely for delay.

The defendant has subdivided his argument into six parts, five of which have little relevance to the central problem raised in his assignment of error.[3] This case does not present a problem of the effective waiver of counsel. Rather, it is concerned with the not unusual situation where trial has begun or, as in this case, is about to begin, and a defendant fires his lawyer and requests a continuance. It is within that framework that we examine the defendant's claim. We note that when the defendant was asked whether he had made any effort to contact his lawyer prior to the morning of trial to tell him that he no longer wanted him, the defendant replied, "Yes, sir, every time I came into court." The judge could have disbelieved that statement, and he obviously did. In fact, the docket entries and the transcript reveal the falsity of that claim. The only other statement made by the defendant concerning his at-

---

to speak to Mr. Dawkins, and then you may reply to the court" (emphasis supplied).

(counsel conferring with defendant)

MR. DAWKINS: "Your Honor, the defendant informs me that he intends to try his own case."

THE JUDGE: "Very well."

[3] We agree that as general principles (1) absent an effective waiver a defendant is entitled to be represented by counsel and (2) that to be effective such a waiver must be knowingly and voluntarily made. (3) There was no need, however, to use the waiver of counsel form called for by S.J.C. Rule 3:10, 351 Mass. 791 (1967), as the defendant had counsel, and the requirements of that rule had been satisfied. (4) Nor was it required that there be any further inquiry into the defendant's competence to represent himself. Such competence was irrelevant in the circumstances of this case. *Faretta* v. *California,* 422 U. S. 806, 835-836 (1975). The record shows that the defendant was intelligent and aware of the problems which confronted him. He had been warned of the pitfalls of proceeding without counsel and had elected to do so after having conferred with Mr. Dawkins. (5) Neither was it necessary for the judge to warn the defendant of the nature and consequences of the charges against him. He had recently been tried and was serving a sentence for armed robbery. He "was no tyro before the courts." *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 518 (1972).

torney was, "I don't want him." (We contrast the reason stated here as to why the defendant did not want his appointed counsel with the detailed statement of reasons given at the time the defendant discharged his previous counsel.) On the record before the judge at that point it was open to him to find, as he did, that the defendant was seeking only to delay the trial.

While it might have been the better practice for the judge to inquire further to determine whether the defendant had other reasons for desiring other counsel (see *Commonwealth* v. *Miskel,* 364 Mass. 783, 790 [1974]), we do not feel that in the circumstances of this case the judge committed reversible error in failing to make further inquiry or that the defendant was deprived of any constitutional right as a result of such inaction. The defendant has cited *Nelson* v. *State,* 274 So. 2d 256 (Fla. App. 1973), to support his contention that it is reversible error to fail to inquire further under these circumstances; we are also aware that there is additional authority to the same effect. See *United States* v. *Woods,* 487 F. 2d 1218 (5th Cir. 1973); *State* v. *Renshaw,* 276 Md. 259, 270, n.6 (1975); *People* v. *Wilson,* 43 Mich. App. 459 (1972). However, those cases are distinguishable on their facts from the present case, and we are not otherwise inclined to follow them as we feel that the better rule of law under such circumstances is that no further inquiry is required as a matter of constitutional law. See *United States* v. *Hampton,* 457 F. 2d 299 (7th Cir. 1972); *United States* v. *Young,* 482 F. 2d 993 (5th Cir. 1973); *Peters* v. *Gray,* 494 F. 2d 327 (7th Cir. 1974); *State* v. *Sweezy,* 291 N.C. 366, 369-375 (1976).

This is not a case where the "court refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant...." *United States* v. *Calabro,* 467 F. 2d 973, 986 (2d Cir. 1972). As we have stated earlier, the court found that the defendant's request was solely a dilatory tactic. This is also not a situation where the defendant has assigned as grounds for changing counsel that there was a conflict of interest or that counsel was incompetent or unprepared,

circumstances which might have prompted further inquiry. See *United States v. Morrissey,* 461 F. 2d 666, 670 (2d Cir. 1972); *United States* v. *Woods, supra,* at 1219; *Nelson* v. *State, supra,* at 258-259. This is simply a situation where the defendant made an eleventh hour request for a change of counsel and for a delay in bringing the case to trial, after having had ample time to make his complaints and desires known. Contrast *Commonwealth* v. *Cavanaugh,* 371 Mass. 46, 52 (1976). We hold that to have countenanced such a request in the circumstances of this case would have resulted in an "intolerable disruption of the criminal justice process." *United States* v. *Woods, supra,* at 1220. See *Commonwealth* v. *Scott,* 360 Mass. 695, 699 (1971); *Commonwealth* v. *Miskel,* 364 Mass. at 791-792; *Lamoureux* v. *Commonwealth,* 412 F. 2d 710, 711 (1st Cir. 1969). Compare *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 517-518 (1972). See also *United States* v. *Rosenthal,* 470 F. 2d 837, 844 (2d Cir. 1972).

## White's Case

The defendant White assigns as error the denials of his motions for severance made at the time Flowers assumed his own defense and his motions for mistrial made during the trial and at its end.[4] The essence of White's argument is that the judge's denial of those motions was an abuse of discretion because Flowers' misconduct while proceeding pro se so disrupted the trial and prejudiced the jury that White was deprived of a fair trial.[5]

The pertinent facts are as follows. White moved for a severance after learning that Flowers intended to proceed

---

[4] Although these assignments of error were made separately, for the purpose of simplification the defendant has chosen to treat them in his argument as one assignment of error, and we treat them compositely.

[5] White argues that the judge's charge to the jury was insufficient to cure any possible impact of Flowers' behavior. This argument is not based on an objection or exception. No request for specific instructions was made to the judge. In fact, at the conclusion of the charge the judge asked counsel for White whether he had anything to say and the response was, "No, your Honor." We do not consider this argument to be properly before us.

pro se. That motion was denied. During jury selection Flowers interrupted the proceedings by stating several times, "I appeals this whole trial." White renewed his severance motion and moved for a mistrial because of Flowers' remarks. The judge denied the severance and instructed Flowers not to disrupt the proceedings. The following day White filed a written motion for mistrial stating that Flowers' defense might be antagonistic to his and that Flowers' conduct in front of the jury might have an adverse effect on White's case. That motion was denied. During the course of trial Flowers interrupted on several occasions and either asked for a lawyer, stated that he wanted to appeal "the whole trial", or requested to be removed from the court. Twice Flowers interjected comments to the effect that he was not receiving justice because he was black. He objected to the introduction of testimony describing the money taken from the Radio Shack on the ground that the money belonged to him and he wanted it returned.

At one point in the proceedings the judge moved the trial to another court room where there were facilities for Flowers to be kept in a separate room with telephone communication to the court room. However, Flowers asked to be allowed to remain in the court room, and the judge agreed, provided he not disrupt the proceedings. Flowers continued to interrupt, but no further protest was made by White. At the close of the Commonwealth's case, White's motion for a mistrial was denied.

During the course of the trial the judge cautioned the jury not to consider Flowers' behavior as bearing in any way upon Flowers' guilt or innocence. The judge continued by stating "[Y]ou will not in any way, Mr. Foreman, ladies and gentlemen, draw any inferences concerning the defendant, Flowers . . . in any way whatsoever. As I have told you before, we are interested in every defendant in this court, and in this Commonwealth, in securing and getting a fair trial . . . based upon the evidence that is produced in court, the testimony and the exhibits, and that is all that we are interested in, and obviously anything that is not based on testimony or based on exhibits or based on the evidence in

the case is not to be considered by you in any way as bearing on the guilt or the innocence of any defendant. We insist that every defendant get a fair trial."

The judge again instructed the jury that "[t]he only thing that we are interested in is what the facts are obtained by a fair and unbiased trial, and the testimony of the witnesses as judged by you people and the exhibits to be given such weight as you feel they are entitled to and because if there were any incidents this morning in another courtroom, that is nothing for you to consider whatsoever because whatever happens today has no bearing obviously on what happened back on September 12, 1974. That is what you are going to judge ...."

The judge properly exercised his discretion in refusing to grant a severance. The defendants were charged with joint participation in a single series of events based on identical facts. *Englehart* v. *Commonwealth,* 353 Mass. 561, 562-563, cert. den. 393 U. S. 886 (1968). *Commonwealth* v. *Nicholson,* 4 Mass. App. Ct. 87, 89 (1976). See *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 705 (1974). Nor do we find any abuse of discretion by the trial judge in denying the several motions for mistrial proffered by White.[6] See *Commonwealth* v. *Sandler,* 368 Mass. 729, 734-735 (1975); *Commonwealth* v. *Lee,* 4 Mass. App. Ct. 453, 459-460 (1976). The judge handled Flowers' disruptive conduct with fairness and tact. His instructions to the jury given during trial and before his charge cautioned them against deciding the case on the basis of any such outbursts. We

---

[6] We do not find *Braswell* v. *United States,* 200 F. 2d 597 (5th Cir. 1952), upon which White relies, to be controlling. There a defendant assaulted and struck a United States marshal in the presence of the jury; a second defendant arose to join in the assault but was forced to the floor by several court attendants and police officers. Those defendants were taken from the court room and later returned in handcuffs. A third defendant attempted to take from her purse two yellow capsules and swallow them. Two police officers grabbed her and extracted the capsules from her mouth. There are other facets which distinguish this case from the present case, and we are satisfied that the circumstances were so different that we are not persuaded to follow the holding of *Braswell.*

have no reason to believe that the jurors failed to disregard those matters which were withdrawn from their consideration. See *Commonwealth* v. *Eagan*, 357 Mass. 585, 587-589 (1970). We regard the instructions to be protective of White's interests as well as those of Flowers. We note that none of the outbursts was connected or directed to White, and none was such as to indicate any guilt on his part. White argues that Flowers' conduct was such as to engender sympathy for the Commonwealth and was thus harmful to him. The record does not support any such conclusion. If anything, we are more inclined to the view that if the jury's sympathy was directed toward anyone, it would have been toward White and his counsel. Furthermore, the judge was ideally situated to assess the possible impact of Flowers' conduct on White's case. We infer from the judge's denial of the motion for mistrial at the conclusion of the evidence that he regarded Flowers' conduct to be without impact on White's right to a fair trial. We "feel safe in concluding on the whole that it is highly probable that the jury would have voted the same way" had they not heard Flowers' utterances. See *Commonwealth* v. *Richards*, 363 Mass. 299, 309-310 (1973); *Commonwealth* v. *Lee, supra,* at 460.

*Judgments affirmed.*

BROWN, J. (concurring). A person accused of a crime has an absolute right under the Massachusetts Declaration of Rights as well as the Federal Constitution to a trial free from an atmosphere or circumstances tending to denigrate the seriousness of the process. See *Estes* v. *Texas*, 381 U. S. 532, 536 (1956). Judicial proceedings must have "dignity, order, and decorum." *Illinois* v. *Allen*, 397 U. S. 337, 343 (1970). It seems to me that this situation would have been much healthier if the defendant White's several motions for a severance and for a mistrial had been allowed. Compare *United States* v. *DiFronzo*, 345 F. 2d 383, 385 (7th Cir.), cert. den. 382 U. S. 829 (1965). This, in my opinion, comes very close to reversible error. See *Aratari* v. *Card-*

*well,* 357 F. Supp. 681, 684 (S.D. Ohio 1973). But see *United States* v. *Bentvena,* 319 F. 2d 916, 930-931 (2d Cir.), cert. den. sub nom. *Ormento* v. *United States,* 375 U. S. 940 (1963); *United States* v. *Marshall,* 458 F. 2d 446, 451-452 (2d Cir. 1972).

In passing, it should be noted that the first Superior Court judge (the then Chief Justice) declared a mistrial during the selection of the jury because "the peremptory challenges of the district attorney [were] not well founded."[1] See *United States* v. *McDaniels,* 379 F. Supp. 1243 (E.D. La. 1974). The assistant district attorney was at that time engaging in that much too often used practice of peremptorily challenging all potential black jurors when the defendant is black. See *Swain* v. *Alabama,* 380 U. S. 202, 223-224 (1965). The former Chief Justice's exemplary action might well be kept in mind by all those engaged in the jury selection process. See, e.g., *United States* v. *Robinson,* 421 F. Supp. 467, 469 (D. Conn. 1976) (vacated on procedural grounds in *United States* v. *Newman,* 549 F. 2d 240 [2d Cir. 1977]), and cases cited. See generally Bell, Race, Racism and American Law 969-970 (1973). Compare *Commonwealth* v. *Talbert,* 357 Mass. 146, 147 (1970); *Commonwealth* v. *Cranshaw,* 4 Mass. App. Ct. 630, 631 (1976). This suggestion is equally applicable where the defendant is a member of any identifiable group or class.

---

[1] See the majority opinion, *supra* at 563.